■ In the Matter of RICKY FAISON, Respondent, v NEW YORK CITY HOUSING AUTHORITY, Appellant. [726 NYS2d 23] —Order and judgment (one paper), Supreme Court, New York County (Emily Goodman, J.), entered June 1, 2000, which annulled respondent's November 10, 1998 determination that petitioner was not entitled to succeed to his mother's public housing lease, unanimously reversed, on the law, without costs, the determination confirmed and the petition dismissed.

Petitioner claimed succession to his mother's public housing

lease as a remaining family member after her death in November 1995. The Housing Authority denied his claim on the ground that his criminal record rendered him ineligible for public housing. The Authority's Management Manual provides that " '[r]emaining family members' shall be offered an Authority lease if they are otherwise eligible for public housing in accordance with the admission standards for applicants contained in the Housing Applications Manual" (NYCHA Management Manual, ch VII, § E [1] [a]). Pursuant to the Standards for Admission, persons who have been convicted of three or more class A misdemeanors within the last 10 years are ineligible until they have "completed five years after all the sentences with no further convictions or pending charges" (§ VI [H] [3] [a] [3]). The Authority's check of his criminal background disclosed that petitioner had pleaded guilty to six class A misdemeanors, four for theft of services, one for petit larceny, and one for criminal trespass, between August 1993 and September 1994.

At his grievance hearing, petitioner admitted to the aforementioned six class A misdemeanors, a 1996 arrest and conviction for injuring a dog, and two additional misdemeanors, one class A and one class B, for theft of services. He offered no explanation for any of these except the conviction for injuring the dog, which he felt was unfair, because he had only "chastised" the pit bull he was raising who had begun to turn on him. The Standards for Admission state that, in the event that it receives unfavorable information about an applicant, the Housing Authority "will give consideration to the time, nature, and extent of the applicant's conduct and to factors which might indicate a reasonable probability of favorable future conduct," e.g., "evidence of rehabilitation" or of "participation in or willingness to participate in social service or other appropriate counseling service programs" (§ VI [H] [2]). Accordingly, the hearing officer advised petitioner that he could provide "anything that would convince a reasonable person that even against these unfortunate things in the past, you have since so rehabilitated yourself that you're eligible for public housing." Petitioner testified on his own behalf but presented no witnesses or evidence. He said that he attended the Times Square Church every other Sunday when he could make it, that he was supposed to start work as a messenger but had lost his identification cards, and that he last worked as a messenger the year before but had lost that job on account of poor attendance. He described himself as a "nice guy" and "not a violent person." The hearing officer recommended that the grievance be dismissed on the ground that petitioner had not

overcome his prima facie ineligibility for public housing by providing convincing evidence of his social rehabilitation. The Authority dismissed the grievance on November 10, 1998, and petitioner commenced this CPLR article 78 proceeding.

The IAS court vacated and annulled the Authority's denial of petitioner's grievance and ordered the Authority to recognize petitioner as the remaining family member and successor tenant. The court held that the Authority had used the wrong standard in rejecting petitioner's tenancy and that the hearing officer had denied him a fair hearing. This was error on both grounds. The court found that under Federal statutes and regulations that govern Housing Authority tenancies and under the Authority's own rules petitioner already is a public housing tenant and that the "not otherwise eligible" determination on which the Authority based its denial of his grievance is not among the grounds for terminating an existing tenancy articulated in the Authority's procedures for termination of tenancies. The applicable Federal statute provides that low income dwelling units shall be rented only to "families who are low-income families at the time of their initial occupancy of such units" (42 USC § 1437a [a] [1]); the term "families" includes "families consisting of a single person in the case of * * * (iv) the remaining member of a tenant family." (42 USC § 1437a [b] [3] [A].) The court concluded that therefore an entire family becomes the tenant. But the statute only defines the circumstances in which a "single person" can be considered a family. It does not define the circumstances in which families are considered eligible to obtain leases to public housing. Similarly, the applicable Federal regulations do not state that the members of the household in addition to the head of the household are tenants and not mere licensees. 24 CFR 5.403 merely includes "[t]he remaining member of a tenant family" among its definitions of "family." It does not address succession rights or even the meaning of the term "tenant."

Moreover, it is clear from a review of 24 CFR part 966, Lease and Grievance Procedures (Apr. 1, 2000 ed), that a "remaining family member" is not the equivalent of a "tenant" under the Federal regulations. The purpose of subpart B of part 966, Grievance Procedures and Requirements, is to assure that a tenant is afforded an opportunity for a hearing on a grievance (24 CFR 966.50). "Tenant" is defined as the adult person(s) who reside(s) in the unit and executed the lease, "or, if no such person now resides in the unit," "the remaining head of household of the tenant family residing in the dwelling unit" (24 CFR 966.53 [f] [1], [2]). Thus a person who claims entitle-

ment to a lease as a remaining family member, although not a "tenant" for all purposes under the regulations, is entitled to due process rights similar to those of a tenant for the purposes of grievance proceedings concerning his claim. In contrast, the purpose of subpart A, Dwelling Leases, Procedures and Requirements, is to prescribe the provisions to be incorporated in public housing leases (24 CFR 966.1), including provisions governing termination of tenancy and eviction (24 CFR 966.4 [*l*]). Subpart A contains no provision defining a remaining head of household as a tenant. Moreover, it embraces a distinction between the tenant and other members of the household (*see, e.g.,* 24 CFR 966.4 [f] [12] [i] "To assure that the tenant, any member of the household, a guest, or another person under the tenant's control, shall not engage in: (A) Any criminal activity"). Thus, neither the Federal statutes nor the Federal regulations support the conclusion that petitioner already was an existing tenant and the Authority terminated his tenancy on grounds inapplicable to existing tenants. Nor do the Authority's own regulations recognize the entire family, and not just the head of the household, as the tenant, by virtue of the Authority's use of "families" and "applicants" interchangeably in its Standards for Admission. This language does no more than signal that the whole family, and not just the head of the household, is the applicant for admission to public housing. It does not equate applicant with tenant.

The Federal regulations require public housing authorities to establish and adopt written admission policies designed, *inter alia*, "[t]o preclude admission of applicants whose habits and practices reasonably may be expected to have a detrimental effect on the residents or the project environment" (24 CFR 960.204 [a] [2] [ii]) and "[t]o establish objective and reasonable policies for selection by the PHA among otherwise eligible applicants" (24 CFR 960.204 [a] [2] [iii]). In selecting tenants, the housing authority may consider "[a] history of criminal activity involving crimes of physical violence to persons or property and other criminal acts which would adversely affect the health, safety or welfare of other tenants" (24 CFR 960.205 [b] [3]). The regulations that set forth eligibility and tenant selection requirements for admission to public housing (24 CFR 960.201, 960.202, 960.204) do not demarcate those applicants for public housing who seek leases as remaining family members. Accordingly, the Authority's Standards for Admission, which were adopted "to exclude persons who, based on their past behavior, might adversely affect the health, safety or welfare of other tenants, Authority staff, or an Authority project" (ch I, § VI [H] [1]), are applicable to remaining family members seeking leases.

The court found that petitioner's fare evasion—the multiple convictions for theft of services over a period of more than four years—was not rationally related to physical violence or endangering the public housing community and therefore the Authority's finding of ineligibility was an error of law and an abuse of discretion. In so finding, the court ignored petitioner's convictions for petty larceny, criminal trespass and injuring a dog—an act of violence—and the fact that he engaged in criminal conduct even during the pendency of his claim. The court also found erroneously that petitioner had presented a petition signed by his neighbors asking that he be allowed to continue to live in the building. In fact, this document, along with letters from a church and a messenger service, was not presented to the hearing officer. It was submitted to the court on petitioner's article 78 proceeding and should not have been considered (*Matter of Fanelli v New York City Conciliation & Appeals Bd.*, 90 AD2d 756, 757, *affd* 58 NY2d 952). To the extent that the court considered any other matter dehors the record, it erred in doing so (*id.*).

As to the due process ground on which the court annulled the Authority's determination, the court's conclusion that the hearing officer denied petitioner a fair hearing is belied by the record, which demonstrates that petitioner was afforded "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (*Mathews v Eldridge*, 424 US 319, 333 [citation omitted].) Petitioner admitted that he received the Authority's Notice of Counterclaims, Affirmative Defenses and/or Defenses, which set forth his criminal record and was accompanied by a copy of the updated grievance procedures advising, *inter alia*, of the right to present evidence and witnesses. In addition, the notice enclosed the Management Manual setting forth the requirements for remaining family member status and the Applications Manual setting forth eligibility standards for applicants with criminal backgrounds. The notice of the grievance hearing also advised petitioner of his right to appear in person, to present witnesses, and to be represented by counsel or other representative. Moreover, the grievance hearing, which was first noticed for October 4, 1996, was adjourned numerous times to enable petitioner to obtain counsel. On February 6, 1998, petitioner appeared without counsel and requested and was granted a final opportunity to obtain counsel with the understanding that the hearing would take place on March 31, 1998, whether or not he had succeeded. Nevertheless, the hearing did not take place until October 16, 1998, and on that date petitioner appeared *pro se*, stating that he had been unable to obtain counsel. He also did not bring

any witnesses, although he had been informed that this was the final hearing date. Nevertheless, the hearing officer agreed to adjourn again to give petitioner another opportunity to present witnesses, if petitioner by his own testimony could persuade the hearing officer that he had rehabilitated himself. Petitioner failed to do this.

There is no support in this record for the IAS court's holding that the Authority's determination that petitioner was not "otherwise eligible" for public housing was affected by an error of law or was arbitrary and capricious (CPLR 7803 [3]). It was therefore error for the court to substitute its own judgment for that of the Authority (*see, Matter of Howard v Wyman*, 28 NY2d 434, 438). Concur—Sullivan, P. J., Andrias, Ellerin, Rubin and Buckley, JJ.