■ In the Matter of SHAMSELL ABDIL, Respondent, v JOHN MARTINEZ, as Chair of the New York City Housing Authority, et al., Appellants. [763 NYS2d 262] —Order and judgment (one paper), Supreme Court, New York County (Joan Madden, J.),

entered November 8, 2002, which granted petitioner-respondent's petition, pursuant to CPLR article 78, and annulled respondent-appellant's determination, dated February 9, 2000, that had dismissed petitioner's grievance to be deemed a remaining family member and to succeed to the tenancy of her deceased father, unanimously reversed, on the law, without costs, the petition denied, the administrative determination reinstated and the article 78 proceeding dismissed.

Petitioner is the daughter of a deceased tenant of an apartment unit of public housing administered by respondent Housing Authority. Respondent, inter alia, administers federally funded housing programs in accordance with regulations promulgated by the United States Department of Housing and Urban Development (HUD). Federal policy provides that public housing authorities should be accorded "the maximum amount of responsibility and flexibility in program administration" so as to fulfill the obligation to provide safe and decent housing to low income families (42 USC § 1437 [a] [1] [C]). However, the Housing Authority's authority in this regard is not unfettered. Rather, it is circumscribed by detailed federal requirements regarding who may occupy such a public housing unit, which also impose obligations on tenants benefitted by their occupancy of public housing. HUD regulations mandate that housing authorities promulgate and adhere to certain tenant selection guidelines (24 CFR 960.202 [a]). These regulations require respondent to screen tenant families' behavior and their suitability for tenancy (24 CFR 960.203 [c]). Each tenant family's composition must be identified and, as occupants, family members must be approved by the Housing Authority; the tenant must obtain permission to add any additional family member as an occupant of the unit (24 CFR 966.4 [a] [1] [v]). The lease must require that the tenant provide information regarding family composition so that the Housing Authority can make determinations regarding appropriate rent, eligibility for housing and the appropriate size of the dwelling unit (24 CFR 966.4 [c]). Tenants may not take in boarders or lodgers, and use is strictly limited to family members who are identified in the lease (24 CFR 966.4 [f] [2], [3]). The Housing Authority "must conduct a reexamination of family income and composition at least annually and must make appropriate adjustments in the rent after consultation with the family and upon verification of the information" (24 CFR 960.257 [a] [1]). Respondent Housing Authority must annually certify to HUD its own compliance with the requirement that it annually reexamine tenant family income (24 CFR 990.113 [b]). Tenant families must "supply any information requested by the [Hous-

ing Authority] or HUD for use in a regularly scheduled reexamination or an interim reexamination of family income and composition in accordance with HUD requirements" (24 CFR 960.259 [a] [2]). Hence, in terms of family size and composition, the level of rent to be charged, and the appropriateness of each individual occupant in a unit of public housing, the Housing Authority is bound by federal mandates, as are tenants through the terms of leases. This regulatory setting governs the present case. The Housing Authority's policies must accommodate these federal regulations.

Petitioner's father had moved into the unit in 1991, at which time petitioner was not residing with him. When the father became the tenant, he signed a copy of the Housing Authority's "Tenant Rules and Regulations," thereby acknowledging that he must adhere to certain requirements as a condition of his tenancy. The Housing Authority's Management Manual includes a detailed tenant selection process by which proposed tenants must qualify for public housing. In an exception, though, it allows for a non-tenant to become a permanent member of the tenant's household under narrowly defined circumstances, but requires the tenant of record to acquire the written consent of the project manager for the proposed occupant. If the tenant of record dies or moves, the Manual also provides a narrow exception regarding "remaining family members," who may succeed to the lease if the family member qualifies for public housing, and had moved into the apartment lawfully, and remained in the apartment continuously. If the proposed occupant had not moved in as part of the original household, he or she will be considered to have moved in lawfully if he or she had obtained the written consent of the project manager to reside there during the tenant's life. In signing the Tenant Rules and Regulations, petitioner's father specifically agreed to be bound by the written consent policy.

Petitioner moved in with her father in February 1997, and gave birth to a child in May 1997. It is undisputed that no consent was obtained for the daughter to occupy the apartment, and, in fact, no notice was provided to the project manager. As such, she was not identified in the lease as a family member occupying the apartment. Her father, the only tenant of record, died in August 1997. Upon being informed of her right to file a "remaining family member grievance," she did so and met with the project manager in September 1997. The project manager noted the absence of consent, denied the application, but forwarded the decision to the district director for review. After providing petitioner an opportunity to submit

further documentation, the district director upheld the determination. Petitioner then requested a formal hearing, which was conducted in January 2000. At the hearing, petitioner testified that she moved in with her father when she had difficulties with her child's father, that hospital records indicated that her child's residence was the subject apartment, and that her father's death was unexpected. However, it also was established at the hearing that the father never sought permission for his daughter's occupancy, notwithstanding his written acknowledgment of his obligation to do so. The documents regularly submitted in connection with his tenancy consistently identified him as the sole occupant and his nearest relative as his wife, with whom he did not reside, and the requirement of written consent for additional occupants was set forth in these documents. Additional evidence confirmed that the father had never indicated to anyone in respondent's employ that his daughter had taken up residence with him.

The final agency determination upheld the determination and dismissed the grievance. In reversing this determination, the court held that the requirement of written consent was ineffective, granted the petition to the extent of annulling the agency determination that had denied the grievance, and sustained the grievance, thereby ruling that petitioner was entitled to a lease for her father's apartment. In finding the written consent requirement ineffective, the court concluded that the Housing Authority's final determination "turned solely" on its own "rule" contained in the Manual (194 Misc 2d 203, 205). As a "rule," the court concluded, it had to have been promulgated in compliance with Public Housing Law § 54 (1). Public Housing Law § 54 (1), as applied by the court, requires that the Housing Authority file with the Division of Housing and Community Renewal (DHCR) a copy of any bylaws, rules and regulations it adopts, which become effective upon approval by the commissioner. This requirement is also set forth in 9 NYCRR 1601.1 (b) and 1625-1.2. The court found that the written consent requirement was such a "rule or regulation," that it had not been so filed, and as such was ineffective by operation of New York law.

Initially, the "written consent" requirement is a policy that only accommodates federal law, and, notwithstanding the nomenclature in the Manual, is not a formal "rule or regulation." Rather, resolution of this matter turns on the applicability of federal guidelines, which require the Housing Authority to adopt policies setting forth HUD mandates regarding occupancy and tenancy, and specifically preliminary approval

thereof (*see* 24 CFR 960.202 [a]; 960.257 [a], [b], [c]; 960.259 [a] [2]; 966.4 [a] [1] [v]; [c], [f] [2], [3]), so that the written consent requirement does not have the force of a Housing Authority regulation. As such, it is not governed by the filing requirement set forth in Public Housing Law § 54.

Regarding petitioner's argument that she is entitled to succeed to the lease as a remaining family member by virtue of her occupancy rather than in compliance with the Housing Authority's requirements, she offers no statutory authority for that proposition. Rather, we have found that the federal regulations create a clear distinction between the tenant and family members who are not tenants (*Matter of Faison v New York City Hous. Auth.*, 283 AD2d 353, 355-356 [2001]). Although a family member seeking succession rights may rely on grievance proceedings to pursue that status, such a family member remains a mere licensee. Insofar as petitioner did not establish either that she received written consent, or was a member of the original tenant household, or that she thereafter was born into or adopted into the original tenant household, the necessary conclusion is that, at most, she was only a licensee with no right to a lease. Petitioner had never acceded to the status of a remaining family member when the original tenancy terminated with her father's death (*Matter of Barnhill v New York City Hous. Auth.*, 280 AD2d 339 [2001]).

Leaving aside the absence of any statutory or regulatory authority in support of petitioner's claim of entitlement to a lease, the Housing Authority was contractually entitled to decline her request. The only tenant of record was her father, and the occupancy of the unit was governed by the lease that he entered. Her father's assent to the written terms governing when an additional occupant might be admitted to the apartment had the force of a contract.

Nor is petitioner's son entitled to a lease as a child born into the original tenant family. First, the son is not the petitioner. His rights are derived, not from his grandfather, but from his mother. As derivative rights, they are no greater than those of his mother's. Insofar as she had not acceded to the status of remaining family member, there is no standing to assert his rights in this proceeding (*Matter of Barnhill v New York City Hous. Auth., supra*). Concur—Tom, J.P., Sullivan, Rosenberger and Gonzalez, JJ. [*See* 194 Misc 2d 203.]