OPINION OF THE COURT
Shirley Werner Kornreich, J.
Petitioner Lorraine Gill brings this CPLR article 78 proceeding and seeks a judgment vacating and annulling the decision of respondent Tino Hernandez, as Chairman of the New York City Housing Authority (NYCHA), to terminate the section 8 rent subsidy for apartment 3E, located at 2050 21st Drive, Brooklyn, New York. Petitioner seeks: (1) classification as a permanent resident of the section 8 household of her now deceased mother Sylvia Gill, made retroactive to December 2005; (2) a stay of the nonpayment summary proceeding commenced in the Civil Court of Kings County by petitioner’s landlord respondent Shore Haven Apartments, LLC; and (3) a declaration that NYCHA’s definition of “remaining family member,” as set forth in the NYCHA’s 2000 occupancy policy, is contrary to federal guidelines and controlling New York case law. Respondents oppose. The court granted a temporary stay of the nonpayment summary proceeding by order dated March 17, 2008.
History of the Case
Sylvia Gill (Ms. Gill), petitioner’s mother, began receiving section 8 subsidies in 1978 for the apartment in which she resided until her death at the age of 83 in 2007. She was listed as the sole member of her household when she initially applied for section 8 assistance. In March 2004, petitioner left the apartment she had been renting for $300 a month and moved into the subject premises to care for Ms. Gill, who by then was receiving dialysis for kidney malfunctioning and was suffering from dementia, sciatica, congestive heart failure, glaucoma, multiple myeloma, and spondylosis. Petitioner was herself sick with blad *392 der cancer and underwent chemotherapy, then surgery to remove her bladder. She must now wear a special bag to collect urine.
At the time petitioner moved in to be with her mother, they were both unemployed, receiving government assistance (Supplemental Security Income [SSI] and Social Security disability, respectively), and section 8 was paying $603.35 of the $726.35 monthly rent. In July 2005, petitioner’s mother completed her annual income recertification and included petitioner’s SSI. Because Ms. Gill was severely disabled as a result of her medical ailments, petitioner brought the form to the NYCHA office and spoke with NYCHA employee Nina Iskin. Ms. Iskin informed petitioner that Ms. Gill must complete an “Occupancy Procedure Form” in order for petitioner to be added to the household. Petitioner proceeded to pick up the required form, which contains the following capitalized caption: “PERMANENT OR CONDITIONAL PERMISSION REQUEST FOR A FAMILY MEMBER/ADDITIONAL PERSON TO LIVE WITH A SECTION 8 FAMILY.” (Exhibit B, order to show cause.) There is nothing in the record to suggest that Ms. Iskin or any other NYCHA employee ever informed Ms. Gill or petitioner that the latter would not be approved under the agency’s succession policy.
Petitioner and her mother completed the “Occupancy Procedure Form” in December 2005. Ms. Gill’s landlord gave permanent status, pending NYCHA approval, to petitioner for inclusion in Ms. Gill’s section 8 household. Petitioner submitted the form, along with supporting documents, including a notarized letter from petitioner’s former roommate verifying petitioner’s former address, the landlord certification form, a letter from Ms. Gill’s doctor stating that Ms. Gill should not live alone due to her multiple medical problems, and a letter from the local Social Security office addressed to NYCHA’s customer service office, and was informed that she could not be added to the household unless Ms. Gill came personally to the NYCHA office to make the request. Petitioner informed NYCHA of Ms. Gill’s disabilities and showed them the attached doctor’s note detailing her maladies; she then left the application with NYCHA. Neither petitioner nor Ms. Gill heard anything further from NYCHA regarding the application and so assumed that the process had been completed and petitioner had been added to the household.
In July 2006, Ms. Gill completed her annual income certification and again included petitioner’s Supplemental Security *393 Income on the form. She also noted on the form that her “daughter has submitted her papers already in 04 [sic].” (Exhibit C, order to show cause.) In September 2006, in response to the form, Ms. Iskin informed Ms. Gill that she must cross petitioner off the form and come to the NYCHA office to add petitioner to the household. Ms. Iskin also noted that petitioner could come to the office to add herself to the household. (Exhibit D, order to show cause.) Ms. Gill returned the form with a written note on it stating, ‘Tam [sic] unable to walk In.” {Ibid.)
In November 2006, after petitioner and her mother inquired as to the status of the application, the same NYCHA employee noted in the case file, “Tnt wanted to add her daughter to the HH [household], I advised to submitt [sic] all info to customer service on 7/31/06.” (Exhibit E, order to show cause.) Ms. Gill’s lease was renewed by Shore Haven Apartments, LLC in July 2007, and petitioner was listed on the lease as Ms. Gill’s cotenant. Ms. Gill completed her income recertification form in or around July 2007, and petitioner again brought the form to NYCHA offices. In September 2007, Ms. Iskin sent Ms. Gill a form with a notation on it stating, “you must come on 3 FL 350 Livingston St in order to add your daughter as I told you last year.” (Exhibit G, order to show cause.) Ms. Iskin then spoke with petitioner by phone and told her to go to customer service if there was a problem. Ms. Gill passed away on October 20, 2007. (Exhibit H, order to show cause.) She had not apparently had a chance to respond to Ms. Iskin’s note.
On November 7, 2007, petitioner went to customer service and spoke with Representative Madray. She provided him with copies of the application and other paperwork originally submitted to NYCHA in 2005. Madray noted in Ms. Gill’s file that the petitioner had not been added to the household and that a NYCHA employee would call petitioner about the status of the application. (Exhibit I, order to show cause [interview record].) NYCHA never contacted petitioner. On November 15, 2007, NYCHA terminated the section 8 subsidy of Ms. Gill. The NYCHA file contains comments by a different agency representative stating that a termination letter had been sent to the landlord, and noting incorrectly that Ms. Gill had been the only tenant of record (exhibit C); the lease renewal dated July 10, 2007 included petitioner as a cotenant. (Exhibit F, order to show cause.) There is no record that the agency ever notified petitioner that the application submitted in 2005 had been decided one way or the other. Since the subsidy had been *394 terminated, petitioner defaulted on her rent, and in late February 2008, respondent building owner Shore Haven began a nonpayment summary proceeding against petitioner seeking the payment of $3,169.32 in unpaid rent.
Discussion and Rulings
A court reviewing an article 78 proceeding must judge the propriety of an administrative action solely on the reasons cited by the administration. (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991].) Such an action must be upheld unless it “shocks the judicial conscience and, therefore, constitutes an abuse of discretion as a matter of law.” (Matter of Featherstone v Franco, 95 NY2d 550, 554 [2000].) CPLR 7803 (3) states that the following questions may be raised in an article 78 proceeding: “[W]hether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed.”
In deciding whether an agency’s determination was arbitrary, capricious, or an abuse of discretion, courts are limited to an assessment of whether a rational basis exists for the administrative determination, “without disturbing underlying factual determinations.” (Matter of Heintz v Brown, 80 NY2d 998, 1001 [1992]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974] [“Arbitrary action is without sound basis in reason and is generally taken without regard to the facts”].) A rational or reasonable basis for the agency’s determination exists if there is evidence in the record to support its conclusion. (See Sewell v City of New York, 182 AD2d 469, 473 [1st Dept 1992].)
Petitioner argues that respondent’s delay in processing the application for addition to Ms. Gill’s section 8 household is unreasonable, and, further, respondent’s failure to process the application in a reasonable amount of time constitutes an abuse of discretion. Petitioner also argues that NYCHA’s definition of “remaining family member” as set forth in the 2000 NYCHA occupancy policy is contrary to federal guidelines and New York law. Finally, petitioner argues that Ms. Gill’s section 8 subsidy should be restored retroactive to November 1, 2007, as petitioner should have been granted succession rights to the subsidy.
Summary of Regulatory Scheme
The Housing Choice Voucher Program, known as section 8 tenant based assistance (section 8), is a program funded by the *395 Department of Housing and Urban Development (HUD) to aid lower income families in acquiring safe and affordable privately owned rental housing. HUD’s rules and regulations are promulgated in title 24, part 982 of the Code of Federal Regulations. Section 8 is administered by state and local public housing agencies known as PHAs, who are authorized to make payments to owners of existing dwelling units. (42 USC § 1437f [b] [1].) HUD has entered into an annual contributions contract with NYCHA, a PHA, to administer a section 8 program in New York. (42 USC § 1437f [b); 24 CFR 982.151 [a].)
HUD regulations forbid payment of section 8 subsidies to the landlord if the tenant is not residing in the apartment. (24 CFR 982.311 [a].) A tenancy addendum must be included in all leases for tenants who wish to receive section 8 subsidies. The addendum states that individuals who are not included in the lease and who have not been approved as part of the “family” “may not be added to the household without prior written approval of the owner and the [housing authority].” (See tenancy addendum 1Í 3 [b], exhibit A [part C], answer.)
While the PHAs have discretion to make their own written administrative plan regarding administration of section 8 subsidies and occupancy policies, these must be in accordance with the HUD regulations and requirements. (24 CFR 982.54 [a], [d] [4] [i] [administrative plan must provide a “(d)efinition of what group of persons may qualify as a ‘family’ ”].) The administrative plan of NYCHA outlines policies including, but not limited to, occupancy and succession rights. (See NYCHA Feb. 16, 2000 administrative plan, exhibit C, answer.) The 2000 administrative plan defines “family” as:
“The tenant(s) of record (the ‘lessee’) and other members of the household receiving Section 8 assistance, who are (1) reported to [the housing authority] by the lessee; (2) to the extent required by governing Federal regulations, accepted by [the housing authority]; and (3) accepted by the landlord (subject to any State or local law or rule that may limit the landlord’s discretion to accept or reject any such person). A family may consist of a single person; or of the lessee and additional persons who occupy the assisted unit in accordance with [the housing authority’s] Section 8 Existing Housing Program Occupancy Policy (‘Occupancy Policy’), appended hereto as Addendum 2.”
Both the former and current policies allow a nonhousehold *396 member to join a section 8 household on a permanent, conditional or temporary basis depending on the circumstances. (See 2000 NYCHA occupancy policy H1ÍI-V; 2007 NYCHA occupancy policy lili III-V)
Under the occupancy policy in the 2000 plan, “permanent” permission to join a section 8 household could be granted only to:
“1. A spouse who marries a lessee or an authorized family member.
“2. The registered domestic partner of a lessee or an authorized family member.
“3. A child legally adopted by a lessee or an authorized family member.” (2000 NYCHA occupancy policy 1f III [A] [l]-[3].)
Under this policy, a person who is not included in the above categories but is “related by blood, marriage or adoption” to the lessee, can join the household on a “conditional” basis only. (Id. 1ÍIV [A].) As part of the “conditional” basis, that person’s income would be added to that of the household for purposes of calculating the section 8 subsidy. (Id. 1i IV [D] [1].) The conditional occupant also would be permitted to reside with the lessee for the duration of the tenancy. (Id. 1i IV [D] [2].)
Under NYCHA’s current occupancy policy, enacted in July 2007, permanent permission can be granted only to:
“1. A spouse or registered domestic partner of any authorized family member.
“2. The dependent children of an added spouse or registered domestic partner.
“3. An adult legally adopted by an authorized family member.
“4. A child under 18 years old born to or adopted by an authorized family member who is not currently residing in the household.” (2007 NYCHA occupancy policy 1i III [A]-[D].)
A natural-born child of the lessee who is 18 years old or older may not be granted a permanent position in the section 8 household. (Id. 1f IV [B].) The adult child can only receive conditional position in the household, and his or her income must be added to the household income to determine the household’s proper share of the rent. (Id. IIIV [B];1i IV) Therefore, under both previous and current policies, an adult child who is not an original family member cannot be granted permanent status in a section 8 household.
To add a person to the household, the lessee must apply to and receive permission from the PHA in writing. (2000 NYCHA *397 occupancy policy 1i I [“(e)xcept for births, no person may join a tenant’s household, unless the tenant requests his/her inclusion in writing and written permission is granted by the Housing Authority”]; 2007 NYCHA occupancy policy 1f I [same].) In both the former and current occupancy policies, conditional members of a household cannot be granted succession rights to the section 8 subsidy. On the application form for addition of a member to the section 8 household, it is stated, “[i]f conditional permission is granted, the additional person is permitted to reside with the Section 8 family during the duration of the subsidized tenancy. The added person has no right to succeed to Section 8 subsidy.” (Exhibit B, answer.) In accordance with NYCHA regulations, only those persons who entered the household as original family members and those persons granted permanent status in the section 8 household may be granted succession rights.
NYCHA’s Handling of the Application
Regardless of whether petitioner would be ultimately entitled to section 8 relief, the record establishes that she and her elderly, disabled and homebound mother complied as well as they could with NYCHA’s guidelines. Instead of providing them with much-needed assistance to negotiate the red tape, the agency representative failed to process the original application, repeatedly requested the same paperwork, callously demanded the personal appearance of the tenant, petitioner’s mother, who she knew or should have known was physically unable to come, then failed to notify petitioner of any decision by the agency on the application and the request for permission to be included in her mother’s household. The irony is palpable in the agency’s hollow assertion that petitioner is now precluded from pursuing her remedy because she failed to provide the requisite paperwork and jump through the correct administrative hoops.
Under the circumstances of this case, the agency’s actions in terminating the subsidy and failing to add petitioner to the household were arbitrary, capricious, unreasonable, and contrary to law. Petitioner was never afforded the opportunity to contest the denial because neither she nor her mother was ever notified of it. Specifically, the agency’s procedure for adding additional persons to the section 8 household provides that if the request meets certain criteria, the agency must send a letter to the landlord and tenant stating that permission will be granted within 30 days without the landlord’s objection. (Exhibit E, answer UII [C].) The agency did not send such a letter to Shore *398 Haven even though the application submitted by petitioner and her mother met the requisite criteria. (Ibid. If II [A].) NYCHA’s obligations to take action and notify the tenant of that action was also triggered by submission of multiple affidavits of income by Ms. Gill listing petitioner. On receiving them the agency was required to notify Ms. Gill and to send certain forms, which were not in fact sent. (Ibid. If VIII.) Instead, the agency failed to acknowledge that Ms. Gill had in fact submitted an application to have her daughter added to the household, then cut off the subsidy without even providing petitioner with advance notice.
In addition, under its succession policy, NYCHA was required to provide petitioner with an opportunity to dispute denial of succession to the subsidy. Paragraph IV of that policy provides, in pertinent part,
“An RFM [remaining family member] claimant may dispute denial of succession to the subsidy of a former lessee and present his/her side of the case at an informal conference with an employee, at the level of assistant manager or higher, of the Housing Authority’s Leased Housing Department . . . Neither the employee who denied the succession, nor his/her direct supervisor shall conduct the conference.”
Consequently, petitioner is entitled to notice and an opportunity to be heard before having the section 8 subsidy terminated and her rent increased.
NYCHA raises the issue of whether petitioner will ultimately prevail before the agency. If NYCHA’s succession policy is controlling, and only remaining family members accepted as “permanent” by NYCHA may succeed to the section 8 subsidy, then further proceedings in this case, even if petitioner is technically entitled to those proceedings, will be futile. However, the court construes the issue under federal and state law to be whether, in spite of the policy, petitioner could be entitled to succeed to the section 8 subsidy as the remaining member of her mother’s family. If the answer to that question is anything less than clear, then the matter must be remitted to NYCHA to hear and determine her particular circumstances. (See Matter of Evans v Franco, 93 NY2d 823, 824 [1999] [CPLR art 78].)
In the Franco case the lower court had decided that the applicant was entitled to succeed to the section 8 subsidy as a “bona fide” family member. The Appellate Division reversed and remitted the case to NYCHA for a hearing to determine if *399 the applicant would be entitled to section 8 benefits as a “remaining family member.” The Court of Appeals reversed, finding that the issue of whether the applying family member would be entitled to the subsidy is “governed solely by Federal law,” application of which did not warrant remitting the case for a hearing. (Id. at 824.) Rather, based on the record before it, the Court concluded that the applicant was not entitled to succeed to the subsidy because the existing subsidized tenant (the family) had not complied with the federal regulation requiring the tenant to “request PHA [housing authority] approval to add any other family member as an occupant of the unit.” (24 CFR 982.551 [h] [2].) The Court explained,
“On this record, it is clear that petitioner was never certified by the NYCHA as a family member. Given the 13 unequivocal annual statements by the deceased that she lived in the apartment alone, there is no basis on this record to conclude that petitioner is a family member or that a hearing is necessary to confirm his status. To permit petitioner to claim status as a surviving family member would be to open the door to possible fraudulent claims and to a wholesale disregard of the intent of the subsidy program” (93 NY2d at 825).
Here, the circumstances compel a different conclusion. There is ample evidence in the record that petitioner and her mother had submitted repeated requests to have petitioner added to the household, that they had notified the agency of petitioner’s cotenancy and of the landlord’s approval. Therefore, the record here establishes that petitioner and her mother complied with the federal regulations by providing notice to the agency, requesting approval of petitioner as a member of the family, and obtaining the landlord’s approval of petitioner as a member of the tenant’s household and cotenant. Under federal law it would appear that petitioner is a “remaining family member.” The issue becomes less clear when NYCHA’s succession policy is considered. Any discussion of the policy must necessarily include a further analysis of the federal law, which controls in this area.
Under section 8 of the revised United States Housing Act of 1937 (42 USC § 1437 et seq.), the term “families” includes families consisting of a single person in the case of “(iv) the remaining member of a tenant family.” (42 USC § 1437a [b] [3] [A].) The federal regulations promulgated by HUD contain identical language. “Family” includes but is not limited to “(b) The remaining member of a tenant family.” (24 CFR 812.2 [1992].) *400 Morrisania II Assoc, v Harvey (139 Misc 2d 651, 655-657 [Civ Ct, Bronx County 1988]) provides a cogent analysis of the federal program:
“The section 8 program recognizes the entire family as the tenant, entitled to occupancy and assistance. It thereby encourages family cohesion and the care of the elderly and disabled in the home. (See, 42 USC § 1437a [former (2)] [D]; § 1437e; 24 CFR part 812.) The statute construes ‘family’ broadly to include, inter alla, a ‘remaining member of a tenant family’ and an elderly or disabled single person. (42 USC § 1437a [b] [3].)
“The term ‘remaining member of a tenant family’ (42 USC § 1437a [b] [3] [C]) is not otherwise defined by statute or regulation. Since it is not ambiguous, it should be defined according to the ordinary and natural meaning of its own words, as a person who had actually been in occupancy as a part of the family unit at the time of the named tenant’s death. Its use recognizes an underlying statutory assumption: all family members have occupancy rights which are not terminated by the death of any member . . .
“These definitions in particular, along with other provisions, indicate a strong policy against the displacement of section 8 occupants. (See, 42 USC § 1437f [d] [1] [B] [ii]; 24 CFR 880.607; see also, Brezina v Dowdall, 472 F Supp 82.) . . .
“In sum, section 8 guarantees continued protection to every legitimate member of the family unit in occupancy. It recognizes that no such family member should suffer eviction, dislocation and homelessness upon the death of the tenant of record. It is thus consistent with the original ameliorative purpose of the United States Housing Act of 1937, the comprehensive legislation of which section 8 forms a part. (See, Thorpe v Housing Auth., 393 US 268, 281.)”
The federal guidelines do give PHAs discretion in defining the “family” that may receive a section 8 subsidy under the local implementation of the federal program, but the right to receive the subsidy is rooted in federal law. Although federal law does not explicitly refer to “succession” or identify the categories of individuals entitled to a section 8 subsidy through succession,
“[t]he general trend has been to analyze each ‘remaining family member’s’ succession claims on a case-by-case factual basis . . . Factors that have *401 been considered to determine succession rights are whether: the parties are living together as a family unit, the length of time the parties were living together, whether the individuals’ income was factored into the annual certifications, and whether the family member was listed on the lease.” (Valley Dream Hous. Co., Inc. v Schmidt, 16 Misc 3d 1138[A], 2007 NY Slip Op 51747[U], *8; see Morrisania II Assoc, v Harvey, 139 Misc 2d 651, 655 [1988].)
Since the record establishes that nearly all of these factors are present in this case, petitioner should be considered a “remaining family member” entitled to continue in the section 8 program. Under NYCHA’s “succession policy,” only a remaining family member who
“entered the unit as an original family member, or “was accorded permanent status by NYCHA to join the household, shall be considered a remaining family member . . . [who] may succeed to the Section 8 subsidy.” (Exhibit F, answer.)
“Permanent” status and the procedural requirements for attaining that status are defined in NYCHA’s occupancy policy, which addresses what is required in order to add an additional person to the “SECTION 8 HOUSEHOLD.” (Exhibit E, answer.)
On its face this policy concerns the family unit occupying the premises before the lessee passes away. There is a subsection that concerns “Succession Rights,” which provides,
“The added person(s) becomes a permanent authorized family member, eligible to succeed to the Section 8 voucher one year after the date he or she becomes an authorized family member. However, in the event that the head of household dies within the year, the additional person shall be granted succession rights immediately.” (Ibid, at 4.)
Strict application of the policy to petitioner would require the court to deny the petition. Petitioner, an adult daughter, does not come within the few narrow categories included in the policy.[1] Rather, petitioner would qualify to receive only “conditional” permission to join the household. But the federal section *402 8 statutory and regulatory scheme, designed as it was to encourage family cohesion, when viewed in conjunction with the individual circumstances based analysis ascribed to by state law, strongly suggests that NYCHA’s policy should not be controlling, but rather one of the many factors to be considered.
In the case of Matter of Abdil v Martinez (307 AD2d 238, 241-242 [2003]), the petitioner argued that NYCHA’s “remaining family member” policy was in reality a regulation that had not been promulgated and therefore was unenforceable. The Court in Abdil concluded that the policy was not controlling but should be considered as a factor in conjunction with the other particular factors of an applicant’s case. (Id.) Nevertheless, the Court denied the petition in that case regardless of individual circumstances, because the petitioner had not only violated the written consent and notice aspect of the administrative policy, but also the controlling HUD regulations requiring notice of the relative’s tenancy and a request to the agency for approval (24 CFR 966.4 [a] [1] [v]; [¶] [3]; see Matter of McFarlane v New York City Hous. Auth., 9 AD3d 289 [1st Dept 2004).* [2]
Contrary to the petitioners in Abdil and in McFarlane, petitioner and her mother had submitted repeated requests to have petitioner added to the household, and had notified the agency of petitioner’s cotenancy and of the landlord’s approval. These circumstances strongly suggest that the agency “knew of, and took no preventive action against, the occupancy by the tenant’s relative,” which the Court in McFarlane explained could be a potential “acceptable alternative for compliance with the notice and consent requirements.” (Id. at 291.) The Mc-Farlane court explained further,
“One type of circumstance that could be of critical importance in establishing a right to be treated as a remaining family member despite the absence of notice or written consent would be a showing that the Authority was aware of the petitioner having taken up residence in the unit, and implicitly approved it. *403 This is so because the controlling statute and regulations express an overriding policy that the public housing authority administering the program should have the untrammeled authority to monitor and approve who lives in its buildings, in order to ensure the overall purpose of providing decent and safe housing to low income families (see 42 USC § 1437 [a] [1] [C]).” (Id.)
In the case here, there was notice, a request for approval by the agency, a lengthy stay, and NYCHA was aware of petitioner’s tenancy and the landlord’s approval yet failed to act.
Accordingly, it is ordered that the application by petitioner for classification as a permanent resident of the section 8 household of her now deceased mother Sylvia Gill is remitted to the New York City Housing Authority for further proceedings consistent with this decision; and it is further ordered that the stay of the summary nonpayment proceeding granted by order dated March 17, 2008 is vacated except that any eviction of petitioner shall be stayed until the outcome of the NYCHA proceeding.

. The policy includes a child born to or adopted by an authorized family member, an adult adopted by an authorized family member, dependent children of an added spouse or registered domestic partner, and the spouse or *402 registered domestic partner of any authorized family member. (Exhibit E 11 III, answer.) Incongruously, an adopted adult, but not a natural child who is an adult, may qualify for permanent status.

. Although Abdil and McFarlane involved subsidized housing as opposed to a section 8 tenancy, that is a distinction without a difference here. The subsidy is “intertwined” with the tenancy in subsidized housing, so the policy there resulting in denial of succession impacted the right to the subsidy and the federal law. (See Davidson 1992 Assoc, v Corbett, 190 Misc 2d 813 [App Term, 1st Dept 2002].)