Judgment, Supreme Court, New York County (Barbara Jaffe, J.), entered March 2, 2011, which denied the petition and dismissed this proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.
In this article 78 proceeding, petitioner Lillian Roberts, executive director of District Council 37, AFSCME, AFL-CIO (DC 37) seeks to annul a determination of respondent Personnel Review Board of the New York City Health and Hospitals Corporation (PRB) which upheld a decision by respondent Health and Hospitals Corporation (HHC) to restructure its layoff units in response to the recent financial crisis. DC 37 is an amalgam of 55 local labor unions, representing approximately 125,000 workers, some of whom are employed by HHC. The remaining petitioners are various local unions and their presidents.
Prior to 1991, HHC had a single corporation-wide layoff unit that included all of its facilities throughout New York City. In 1991, HHC created smaller layoff units based on individual hospitals and health care facilities within HHC. In 2009, in response to financial pressures faced by the City, HHC again restructured its layoff units. By memorandum dated April 21, 2009, HHC gave notice that it was amending its Personnel Rules and Regulations (the HHC rules) to create eighteen additional, smaller, layoff units within the existing hospital and medical centers that had previously been designated as the layoff units.* HHC announced plans to either close or reduce staff at the clinics and programs designated as the new layoff units. Approximately 87 HHC employees were affected.
*670 The proposed rule amendment became effective on May 3, 2009. In response, DC 37 sent a letter to HHC objecting to the creation of the new layoff units and requesting review of the amendment. HHC upheld the amendment, asserting that the creation of the layoff unit subdivisions was within its power under the HHC rules. DC 37 filed an appeal with PRB, which has the authority to review personnel rules promulgated by HHC. On March 25, 2010, after a hearing, PRB denied DC 37’s appeal.
By petition dated July 15, 2010, DC 37 and its affiliated local unions commenced the instant article 78 proceeding contending that PRB’s decision to uphold HHC’s amendment was arbitrary and capricious. Respondents cross-moved to dismiss the petition as time-barred and for failure to state a claim. In a judgment entered March 2, 2011, the motion court dismissed the proceeding, concluding that the petition was untimely since it was filed more than four months after the May 3, 2009 effective date of the amended rule (see CPLR 217 [1]).
The motion court should not have dismissed the proceeding as time-barred. Petitioners did not obtain a “final and binding” determination within the meaning of CPLR 217 (1) until PRB rendered its decision on March 25, 2010 (see Walton v New York State Dept. of Correctional Servs., 8 NY3d 186, 194-195 [2007]). Because petitioners commenced this proceeding within four months of PRB’s determination, it was timely (see CPLR 217 [1]). Indeed, on appeal, respondents expressly abandoned their argument that the petition is time-barred.
Although the motion court did not address that part of respondents’ cross motion seeking dismissal for failure to state a claim, the parties on appeal both have asked this Court to determine the merits of the petition based on the record below and the arguments set forth in the appellate briefs. CPLR 7804 (g) provides, in relevant part, that “[w]hen the [article 78] proceeding comes before it, whether by appeal or transfer, the appellate division shall dispose of all issues in the proceeding, or, if the papers are insufficient, it may remit the proceeding” (emphasis added). Thus, we are empowered to resolve all issues in an article 78 proceeding regardless of the manner in which the proceeding has reached us (see Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7804:8 [“To preserve judicial economy, . . . CPLR 7804 (g) has been interpreted as a direction to the Appellate Division to consider all of the questions that are presented in an Article 78 proceeding no matter how the case arrived at its doorstep” (citing Matter of 125 Bar Corp. v State Liq. Auth. of State of N.Y., *671 24 NY2d 174 [1969])]). Since the papers here are sufficient to permit review, and in light of the parties’ specific request, we deem respondents’ cross motion and appellate brief to be their answer, and proceed to address the merits of the petition (see Matter of Ecumenical Task Force of Niagara Frontier v Love Canal Area Revitalization Agency, 179 AD2d 261, 266 [1992], lv denied 80 NY2d 758 [1992]).
It is well settled that judicial review of administrative determinations is limited to whether the determination was affected by an error of law, was arbitrary and capricious, or constituted an abuse of discretion (Matter of Langham Mansions, LLC v New York State Div. of Hous. & Community Renewal, 76 AD3d 855, 857 [2010]; CPLR 7803). An action is arbitrary if it “is without sound basis in reason and is generally taken without regard to the facts” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). Where a rational basis exists for an agency’s action, a court may not substitute its judgment for that of the agency, and the agency’s determination, acting pursuant to legal authority and within its area of expertise, is entitled to deference (Matter of Tockwotten Assoc. v New York State Div. of Hous. & Community Renewal, 7 AD3d 453, 454 [2004]).
Petitioners have failed to show that PRB’s upholding HHC’s creation of additional layoff units was arbitrary or capricious, or affected by an error of law. Section 2.2.1 of the HHC rules gives HHC the authority to amend its own rules and regulations. And section 7.6.2, which governs layoff units, provides that HHC “may by rule designate an individual facility or division of any facility of [HHC] as separate units for layoff or demotion under this rule” (emphasis added). Thus, the HHC rules explicitly grant HHC the discretion to designate programs and clinics of HHC facilities as layoff units. And, as pointed out at the hearing, HHC acted consistent with its past practice of designating hospital programs as layoff units.
At the hearing, HHC explained that the closing of the clinic and hospital-based programs was necessary to provide continuity of patient care in light of the budget deficit crisis facing the City. And in its decision, PRB found that HHC’s actions were predicated on budgetary deficits that required closure and/or consolidation of programs and clinics in order to minimize the impact on patient care. PRB’s decision was consistent with its previous precedent that “a presumption of regularity exists in the establishment of separate layoff units, until it is demonstrated that the layoffs were not done in accordance with a rational plan” (PRB decision No. 682 [May 27, 1992]).
*672 Petitioners have failed to show how the creation of the new layoff units was irrational in the face of the budgetary crisis facing HHC (see e.g. Matter of Aldazabal v Carey, 44 NY2d 787, 788 [1978] [in the face of budgetary constraints, agency did not act arbitrarily or capriciously by abolishing positions and creating lower-grade positions]; Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v Rockland County Bd. of Coop. Educ. Servs., 39 AD3d 641, 642 [2007] [“A public employer may abolish civil service positions for the purpose of economy or efficiency”]). Nor is there any merit to petitioners’ claim that the creation of the new layoff units violates the seniority and displacement rights contained in sections 7.6.3 and 7.6.5 of the HHC rules. Those sections merely outline the order of layoffs and the right of displacement within the same layoff unit, and do not prohibit HHC from creating additional layoff units, as specifically authorized by rule 7.6.2. We recognize that some longtime employees may lose their jobs, and newer employees may not. Although that is unfortunate, in the absence of any nonconclusory showing of bad faith, we will not disturb HHC’s determination (see Matter of Aldazabal, 44 NY2d at 788).
Although there may have been a different way for HHC to structure its layoff plan, we cannot say that the agency acted in an arbitrary or capricious manner (see Matter of Terrace Ct., LLC v New York State Div. of Hous. & Community Renewal, 79 AD3d 630, 635-636 [2010] [“a court’s opinion that a particular outcome is not fair or is not in the interests of justice is not sufficient to overcome the deference to be afforded an agency acting rationally within its area of expertise”], affd 18 NY3d 446 [2012]). We decline to substitute our judgment as to how HHC should implement personnel decisions when determining how best to provide health care to the people of New York City (see Matter of Merson v McNally, 90 NY2d 742, 752 [1997] [it is not role of a court to weigh the desirability of an agency’s action or to substitute its judgment for that of the agency]). To do so would be an unwarranted intrusion into the managerial prerogative of HHC, which acted within its rule-making authority.
We have considered petitioners’ remaining contentions, including their conclusory claim of age discrimination, and find them unavailing. Concur — Saxe, J.P., Sweeny, Renwick, DeGrasse and Richter, JJ. [Prior Case History: 2011 NY Slip Op 30534(U).]

 For example, prior to the 2009 amendment, the HHC rules designated North Central Bronx Hospital as a layoff unit. Following the amendment, three additional layoff units were created: Jacobi HIV-COBRA Case Management, NCB COBRA Case Management, and Tremont Communicare.