In this proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County [Paul Wooten, J.], entered July 11, 2011), to annul the determination of respondent New York City Housing Authority (NYCHA), dated June 2, 2010, which approved the decision of *482 the Hearing Officer denying petitioner’s remaining-family-member grievance, the petition is unanimously granted, without costs, the determination is annulled, and the matter is remanded for further proceedings in accordance with this decision.
Petitioner Carlos Gutierrez (Carlos) seeks to succeed to the tenancy of his late mother, Amparo Gutierrez (Amparo), as a remaining family member (RFM) in an NYCHA apartment. At the time of her death, Amparo was the tenant of record at 911 FDR Drive, apartment 5A, in the Jacob Riis Houses, a public housing complex owned and operated by NYCHA. Amparo had lived in the subject apartment for approximately 50 years, and throughout her tenancy, paid her rent on time and was in good standing with her landlord. She and her husband raised her four children, including Carlos, in the apartment. Carlos moved out in January 1975, when he was approximately 21.
On September 13, 2004, the then 74-year-old Amparo, who was widowed in 2001, wrote to NYCHA, requesting that Carlos be permitted to move back in with her to take care of her. Her letter request described her “poor health and various medical needs which include[d] congenital heart failure, diabetes, remission from cancer and the need for an oxygen tank 24 hours a day . . . requiring] that she depend upon others to assist her in the simplest tasks.” It continued, “If my son were able to stay in my house this would be a great help and a tremendous relief and comfort to me.”
Amparo then completed the required NYCHA form request to add a tenant to a lease {see 24 CFR 966.4 [a] [1] [v]). The form was dated September 23, 2004, and signed by both mother and son. That year, Carlos was 50 years old, psychiatrically disabled, and receiving Supplemental Security Income as his sole source of income. He provided NYCHA with a birth certificate, a copy of his social security card, proof of income, and proof of his prior address.
NYCHA did not act on Amparo’s application within 90 days, as required by its internal rules {see NYCHA Management Manual, ch iy Occupancy, subd iy Changes in Family Composition). However, Amparo informed the management office that Carlos had moved in with her, and she listed Carlos and his income on her 2003, 2004, 2005, and 2006 income affidavits for the apartment. She also named him in the section of the affidavit of income requiring a description of “family composition” as a person living with her in her apartment. NYCHA’s notes indicate that Amparo went to the management office on September 16, 2005 regarding an “unauthorized occupancy,” but that “NYCHA told [Amparo] in 2004 that everything was ok.”
*483 On July 13, 2006, NYCHA conducted a criminal background check on Carlos, and found that he had a 10-year-old burglary conviction. Although, under NYCHA’s internal rules, Amparo should have been given the opportunity to show that her son was rehabilitated (see Applications and Tenancy Administration Department Manual, ch V, § F [2] [Department Manual]), NYCHA made no inquiry of Amparo or Carlos in 2006 as to Carlos’s conviction, and gave neither of them an opportunity to present evidence of rehabilitation at that time.
Having deemed Carlos ineligible due to a criminal conviction, a Housing Manager was required to notify Amparo that he was required to vacate the premises within 15 days (General Management Directive-3716 § VIII [B] [1]), and then to initiate Termination of Tenancy proceedings if Carlos failed to leave (id. § VIII [B] [2]). However, no one told Amparo or Carlos that Carlos had to vacate the premises in July of 2006, and no termination proceeding was initiated. In fact, the record contains no evidence that the Housing Authority issued any oral or written decision on the 2004 application to add Carlos to the lease.
On May 12, 2007, Amparo died. Carlos promptly notified the Housing Authority of his mother’s death, and he continued to pay the monthly rent for the apartment. On July 30, 2007, Carlos filed a second request to be added to the lease; the request had been signed by Amparo on March 26, 2007. NYCHA issued a written order denying the application on August 9, 2007, on the grounds that: (1) Amparo had died prior to its filing; and (2) Carlos was ineligible to gain any rights to his mother’s tenancy until May 28, 2008. Assuming Carlos received this notice, it was the first indication he received that there was a problem with his tenancy.
On February 5, 2008, NYCHA commenced a holdover proceeding against Carlos in Civil Court.* The next day Carlos met with a project manager at the housing complex to claim RFM status. The project manager informed him that he was not entitled to stay in the apartment as an RFM because he was not part of the family composition at the time of his mother’s death.
NYCHA’s notes from this meeting state that Amparo’s first request to add her son to her tenancy was denied because Carlos was ineligible until May 28, 2008. They state that Amparo’s second request was denied because it was submitted after her death. By letter dated April 10, 2008, NYCHA notified Carlos *484 that he had until April 24, 2008 to submit documentation, or request a personal interview with Borough Management, to support his RFM application. The District Office upheld the project manager’s disposition, and Carlos filed an administrative appeal.
Carlos was appointed an attorney and a guardian ad litem (due to his psychiatric disability) for his administrative hearing, which was held over four days between January 2009 and February 2010. He submitted documents supporting his mother’s need for his care, including a letter from a physician at Bellevue Hospital, dated August 17, 2004, detailing Amparo’s medical condition; and letters from Amparo and Amparo’s son-in-law, dated September 13, 2004 and October 2, 2005, emphasizing her poor health and the need for Carlos to stay with her. Jacqueline Quiros, Carlos’s sister, testified at the hearing in support of her brother, stating that she had helped Amparo submit a permanent permission request in 2004 or 2005, to which Amparo never received any response.
Carlos submitted substantial documentary evidence in support of his tenancy, including compelling evidence of rehabilitation. In 1996, while drunk, Carlos was found trespassing in a hospital, was arrested, and pleaded guilty to third-degree burglary. While in prison, he became sober. Multiple sources confirmed that he retained his sobriety up until the time of the hearing. Carlos was diagnosed with bipolar disorder for the first time in prison, and in 2001 he was transferred to the Manhattan Psychiatric Institute, where he had continued his treatment without incident. The record contains letters from social workers and a physician at Manhattan Psychiatric Center, dated March 23, 2007, November 30, 2008, and June 22, 2009, stating that Carlos had been psychiatrically stable for many years, was “100% compliant with all treatment recommendations,” and continued to meet regularly with social workers and a psychiatrist, who prescribed and monitored his use of psychotropic medications. The record also contains a “petition,” signed by about 23 tenants of Jacob Riis Houses, indicating their support for Carlos as a good neighbor.
The Hearing Officer denied Carlos RFM status. She held that NYCHA “belatedly but properly disapproved” Amparo’s September 23, 2004 permanent permission request on July 27, 2006, when a criminal background check revealed Carlos’s 1996 burglary conviction and made him “ineligible for residence until May 28, 2008.”
Carlos then commenced this article 78 proceeding. He asserted that NYCHA’s failure to timely respond to Amparo’s *485 2004 permanent permission request was arbitrary and capricious, an abuse of discretion, and a violation of his due process rights. Among other things, he asserted that NYCHA’s failure to give him an opportunity to demonstrate his rehabilitation from his 1996 burglary conviction was a violation of NYCHA rules and a violation of his rights as a prospective public housing tenant.
In its answer, NYCHA denied the material allegations of the amended petition and asserted various defenses, including that Carlos cannot invoke estoppel against the agency; that his payment of rent does not vest him with RFM status; and that he lacks standing to challenge the denial of Amparo’s permanent permission request.
On the issue of standing, the law is settled that a family member has a right to bring an article 78 proceeding to challenge a denial of succession rights to a public housing apartment (see Matter of Valentin v New York City Hous. Auth., 72 AD3d 486, 486 [1st Dept 2010]; Via v Franco, 223 AD2d 479 [1st Dept 1996]).
We annul NYCHA’s determination on the ground that it is not supported by substantial evidence. While the agency correctly asserts that Carlos’s RFM status is jeopardized by the fact that he never received written permission to be added to his mother’s lease while she was alive, the record is plain that Amparo took every step to have her son added to her lease, as required by 24 CFR 966.4 (a) (1) (v), and it is undisputed that NYCHA violated a number of its own internal rules by determining that Carlos’s 1996 conviction precluded him from joining Amparo’s tenancy until May of 2008, without notifying Amparo or Carlos, and without giving them the opportunity to present evidence of Carlos’s rehabilitation. Furthermore, neither Amparo nor Carlos was aware that Carlos had been deemed an “ineligible” occupant, as NYCHA failed to institute proceedings to have him removed within 15 days of its decision, which, at least, would have alerted them to the problem (see Matter of Frick v Bahou, 56 NY2d 777, 778 [1982] [“rules of an administrative agency, duly promulgated, are binding upon the agency as well as upon any other person who might be affected”]).
Finally, while estoppel is not available against a government agency engaging in the exercise of its governmental functions (Advanced Refractory Tech. v Power Auth. of State of N.Y., 81 NY2d 670, 677 [1993]), we have held that NYCHA’s knowledge that a tenant was living in an apartment for a substantial period of time can be an important component of the determination of a subsequent RFM application (Matter of McFarlane v *486 New York City Hous. Auth., 9 AD3d 289, 291 [1st Dept 2004], citing 42 USC § 1437 [a] [1] [C]). In addition, Carlos has had no problems in the building or the neighborhood since moving back home in 2004.
Carlos and Amparo were consistently open and honest with NYCHA, and they followed its rules. Carlos did not conceal the fact of his arrest in 1996. He provided extensive support for the conclusion that he is vigilant in addressing all of the issues related to his mental illness and his substance abuse. The rent for the apartment has been paid by Amparo and Carlos consistently in a timely manner.
Because neither Carlos nor his mother was made aware of the 2006 criminal background check (or any conclusions drawn therefrom at the time by NYCHA), he was not given an opportunity to be heard on the crucial issue of his rehabilitation “at a meaningful time and in a meaningful manner” (Mathews v Eldridge, 424 US 319, 333 [1976] [internal quotation marks omitted]). We do not dispute that NYCHA has broad discretion to restrict the occupancy of its apartments and to enact an extensive set of procedural and substantive requirements to be met in the process of selecting its tenants. In the circumstances presented, however, Amparo was entitled to notice of the fact that the Housing Authority had a problem with her son’s application (namely, his conviction), so that she could provide evidence of his rehabilitation (see Matter of Miller v New York City Hous. Auth., 279 AD2d 349, 350 [1st Dept 2001], lv denied 97 NY2d 602 [2001]).
Because Amparo was deprived of the opportunity to which she was entitled to compile and present evidence of her son’s rehabilitation, NYCHA’s purported denial of her 2004 request to add Carlos to her household was not supported by substantial evidence.
However, on the extant record, we cannot ascertain whether this almost 60-year-old, psychologically disabled man, who presented evidence of continuing psychiatric and substance abuse counseling, presently poses a threat to the other tenants. Accordingly, we remand to NYCHA for reconsideration of that narrow issue.
Concur—Gonzalez, EJ., Acosta, Saxe and Gische, JJ.

 The proceeding was discontinued on March 26, 2008, due to defective papers.