OPINION OF THE COURT
Lucy Billings, J.
Petitioner seeks reversal of a determination by respondent New York State Division of Human Rights (NYSDHR) of no probable cause for her complaint against respondent Weston United for discrimination based on her race or color and her disability. (CPLR 7803 [3].) She claims the determination was arbitrary because NYSDHR refused her offer of additional documentary evidence to substantiate her complaint and her request for replacement of the assigned investigator and, consequently, NYSDHR’s investigative record was inadequate and biased in favor of Weston United.
Weston United moves to dismiss the petition on the grounds that it fails to state a claim that NYSDHR’s determination was arbitrary. (CPLR 3211 [a] [1], [7]; 7804 [f].) Weston United maintains that the determination was rationally based on substantial evidence in the record, consisting of the parties’ documentary evidence, an extensive investigation of the *448 complaint, and a final investigation report incorporated in the determination.
NYSDHR has answered the petition and filed a certified transcript of the proceedings before the agency that the petition asks the court to review (CPLR 7804 [e]), much of which Weston United presents as documentary evidence supporting the motion to dismiss the petition. (CPLR 3211 [a] [1].) While the documents Weston United presents do fall within the limited categories of documentary evidence the court may rely on to dismiss the petition under CPLR 3211 (a) (1), most of Weston United’s documents are not presented in admissible form. (See United States Fire Ins. Co. v North Shore Risk Mgt., 114 AD3d 408, 409 [1st Dept 2014]; Regini v Board of Mgrs. of Loft Space Condominium, 107 AD3d 496, 497 [1st Dept 2013]; Flowers v 73rd Townhouse LLC, 99 AD3d 431 [1st Dept 2012]; Correa v Orient-Express Hotels, Inc., 84 AD3d 651 [1st Dept 2011].) Since NYSDHR does present them in admissible form, however, the court has considered them before denying, in part, Weston United’s motion.
I. The Parties’ Claims
In petitioner’s complaint to NYSDHR, petitioner, at the time a resident of Weston United’s shelter, claimed harassment by Weston United’s staff and other residents and physical threats and assault by her roommates, all of whom are African American, because she is white and disabled by Chronic Lym-phocytic Leukemia. She alleges that Weston United denied her requests for basic necessities such as toilet paper, soap, and MetroCards or alternate transportation to medical appointments; assigned her a room with dangerous residents; denied her request for a single room despite her roommates’ physical threats; and threatened to transfer petitioner to another facility. She further alleges that Weston United’s employee lied to the police to thwart her complaint to the police when a resident attacked her with a knife. Finally, she claims that each of these actions by Weston United was in retaliation against her for having filed grievances about Weston United’s or its residents’ prior conduct.
Weston United, the operator of a shelter serving mentally ill residents in New York County’s Harlem neighborhood, insists that petitioner failed to provide any evidence to support her claim of discrimination based on her race or color and her disability, and therefore NYSDHR’s determination was rationally *449 based on evidence in the record. Weston United claims that, despite petitioner’s failure to provide evidence of medical necessity, respondent accommodated her requests for transportation and provided petitioner MetroCards on several occasions, but, when MetroCards were unavailable, provided her alternative van services, which she either refused or failed to avail herself of at the scheduled time. Similarly, Weston United offered petitioner a single room on four separate occasions, which she refused, and provided her basic necessities. The transfer to another facility was merely a suggestion to accommodate her request for a single room.
Regarding petitioner’s complaint to the police, Weston United maintains that petitioner again has misinterpreted its employee’s conduct. Rather than affirmatively thwarting petitioner’s complaint, the employee, having not witnessed the claimed attack on petitioner, simply could not corroborate her complaint to the police.
II. NYSDHR’s Investigation and Determination
NYSDHR determined that its investigation uncovered insufficient evidence to support a finding of probable cause that Weston United discriminated against petitioner based on her race, color, or disability, as she failed to show a nexus between her treatment by Weston United of which she complained and her race, color, or disability. In this proceeding pursuant to CPLR article 78, judicial review is confined to whether the administrative determination was arbitrary, an abuse of discretion, or affected by an error of law. (Matter of BarFreeBedford v New York State Liq. Auth., 130 AD3d 71, 77-78 [1st Dept 2015]; Matter of City of New York v New York State Nurses Assn., 130 AD3d 28, 34 [1st Dept 2015]; Matter of 20 Fifth Ave., LLC v New York State Div. of Hous. & Community Renewal, 109 AD3d 159, 163 [1st Dept 2013]; Matter of Roberts v Gavin, 96 AD3d 669, 671 [1st Dept 2012].) A determination is arbitrary if it is not supported by any rational basis or is in disregard of the facts. (Matter of Beck-Nichols v Bianco, 20 NY3d 540, 559 [2013]; Matter of Lantry v State of New York, 6 NY3d 49, 58-59 [2005]; Roberts v Gavin, 96 AD3d at 671; Matter of Metropolitan Movers Assn., Inc. v Liu, 95 AD3d 596, 598 [1st Dept 2012].)
Specifically, NYSDHR found that Weston United offered petitioner various single rooms, which she refused, because she insisted on one particular single room that was unavailable, and that Weston United adequately addressed her transporta *450 tion needs by providing vans to transport her and owed no obligation to provide her MetroCards instead. NYSDHR’s investigation also showed that Weston United provided petitioner basic necessities.
The administrative record supports these specific findings, except the unqualified conclusion that Weston United owed no duty to provide petitioner MetroCards. As the investigation report itself sets forth, Weston United adopted and was governed by New York City Department of Homeless Services (DHS) rules. These rules required Weston United to provide MetroCards upon request to residents “without income to engage in the business of daily living” including medical appointments, regardless of evidence showing medical necessity. (Administrative record, exhibit 2G at 1; affirmation of Lori D. Bauer, exhibit E at 8 [Procedure No. 00-411].) Weston United has not claimed, and NYSDHR never found, that petitioner’s income was sufficient to purchase MetroCards. Residents are not expected to walk everywhere, even if they are fully ambulatory. Nevertheless, the administrative record does support the conclusion that Weston United’s failure to provide petitioner MetroCards was unrelated to her race, color, or disability, particularly given that Weston United did provide her alternative transportation.
NYSDHR further found that the record compiled lacked evidence to support petitioner’s complaint that other residents labeled her with racial slurs and harassed her due to her race or color and that, in any event, as the operator of a shelter for persons with mental disabilities, Weston United may exercise discretion in handling grievances between residents. According to NYSDHR, petitioner failed to establish that Weston United responded to her complaints differently than complaints by residents who do not share her race.
III. The Gap in NYSDHR’s Investigation and Determination
The record compiled and presented here does lack evidence to support an inference that Weston United treated petitioner differently due to her physical disability or failed to accommodate her physical disability. In two respects, however, the record fails to negate an inference that Weston United discriminated against petitioner based on her race or color.
A. Weston United’s Failure to Address Other Residents’ Racial Slurs and Discriminatory Remarks Toward Petitioner
Petitioner identified several Weston United staff members who witnessed other residents calling her a “white bitch” and *451 using other racial slurs toward her. NYSDHR’s investigation report also recounts two witnesses who heard residents using racial slurs, such as “whitey,” “white bitch,” and “fucking white bitch,” as well as “fucking Italian,” and making other discriminatory remarks toward petitioner. The witnesses also observed Weston United staff witnessing the incidents, but refusing to discipline these residents or to address the incidents in any way.
The DHS rules adopted by Weston United allowed but did not require, as petitioner requested, Weston United to discharge residents who used racial slurs and harassed another resident. (Administrative record, exhibit 2B at 1; Bauer affirmation, exhibit D at 19 [Statement of Client Rights and DHS Code of Conduct].) Weston United’s own rules prohibited abusive or threatening language, harassment, and intimidation of residents and staff. (Administrative record, exhibit 2D at 1; Bauer affirmation, exhibit D at 26 [Weston United rules and regulations].)
Yet Weston United points to no efforts, and the record presented by NYSDHR reveals none, that Weston United undertook to address residents’ racial slurs and other discriminatory remarks toward petitioner, whose Caucasian race was the minority race among both residents and staff in the shelter. (See Executive Law § 296 [2] [a]; [2-a] [b].) NYSDHR’s reasoning that Weston United, by virtue of its service to persons with mental disabilities, is vested with discretion to handle residents’ grievances, in particular by ignoring them, cites no evidence in the record, no rule, nor any legal authority. Lacking that support, this determination is arbitrary. (CPLR 7803 [3]; Matter of Polayes v City of New York, 118 AD3d 425, 426 [1st Dept 2014]; Matter of East Riv. Hous. Corp. v New York State Div. of Human Rights, 116 AD3d 562, 563 [1st Dept 2014]; Gutierrez v Rhea, 105 AD3d 481, 486 [1st Dept 2013].)
B. Weston United’s Treatment of Petitioner’s Grievances Differently from the Grievances by Residents of a Different Race
To support the related determination that petitioner failed to establish Weston United’s treatment of her grievances differently from the grievances by residents of a different race, NYSDHR relies on a witness who identified her race as other than white and claimed that Weston United failed to respond to her complaint of harassment. NYSDHR’s investigation report, however, which serves as a basis for its determination, reveals no witness who identified her race as other than white. Only *452 as the basis for the NYSDHR Director’s determination of no probable cause does NYSDHR suddenly rely on a nonwhite witness.
If NYSDHR is referring to the two witnesses whom its investigation recounts as having heard residents use racial slurs and make other discriminatory remarks toward petitioner and as having observed Weston United staff witness the incidents, but refuse to address them, these witnesses identified themselves as white and as white, Hispanic, and Indian. Contrary to NYSDHR’s final determination, neither witness identified her race as other than white. Nor does NYSDHR’s investigation report indicate that either of these two witnesses claimed that Weston United ignored her complaint of harassment. If NYSDHR is referring to a third witness, nothing in its investigation report supports its conclusion that this witness was other than white.
More importantly, assuming NYSDHR’s investigation did include a third witness, who identified her race as other than white, neither its determination nor its investigation report explains how evidence from such a witness who complained of Weston United’s lack of response to her grievance shows the absence of disparate treatment based on race. Her account may show Weston United’s similar unresponsiveness to a grievance by a resident of a different race or color, but not that Weston United also ignored grievances from African Americans, the racial majority at the shelter, let alone ignored grievances by African American victims of racial slurs or harassment.
In sum, nothing shows that Weston United treated grievances by whites and by African Americans equally; treated grievances by whites and by African Americans about racial slurs and harassment equally; or treated grievances about racial slurs and harassment equally with other grievances unrelated to race. This last showing is particularly important since African Americans, being in the racial majority, may not have complained about racial slurs and harassment. For these reasons, Weston United’s failure to address the complaints by petitioner, in the racial minority at the shelter, and any third witness, whose nonwhite race NYSDHR failed to ascertain in conducting interviews by telephone, substantiates, rather than vitiates, petitioner’s claim of racially disparate treatment by Weston United’s staff. (See Boureima v New York City Human Resources Admin., 128 AD3d 532, 533 [1st Dept 2015]; Carryl v MacKay Shields, LLC, 93 AD3d 589, 590 [1st Dept 2012].)
*453 This claim is bolstered further by petitioner’s claim of a Weston United staff member’s false dissemination to shelter residents that petitioner was an illegal alien, a claim that NYSDHR’s final determination also fails to address, even though its investigation report details a witness’ corroboration of this claim. Although petitioner did not specifically complain of discrimination based on her national origin, she did complain, and, as NYSDHR’s investigation report found, a witness corroborated, that residents called her a “fucking Italian” and that Weston United staff who also heard the slur refused to address it. {See Executive Law §§ 292 [8]; 296 [2] [a]; [2-a] [b].) While these and other forms of harassment about which petitioner claimed do not all involve racial remarks, together with the racial remarks, labelling her as an illegal alien or “fucking Italian” still shows that she was singled out for harassment due to her minority race or color.
IV. Conclusion
NYSDHR’s determination of no probable cause for petitioner’s claims of racial discrimination provides no justification for its conclusion that Weston United may do nothing to address petitioner’s complaints of racial slurs and harassment. Nor does NYSDHR justify its insistence that petitioner has failed to show Weston United responded to her complaints differently from complaints by residents who are not white. Petitioner has shown that Weston United did not respond to white residents’ complaints of racial slurs and harassment. No evidence shows that Weston United also ignored complaints by African American residents. More importantly, since they were in the racial majority, no evidence indicates they were the victims of racial slurs or harassment. Therefore the record fails to negate the inference that Weston United’s failure to respond to white or other non-African American residents’ complaints of racial slurs or harassment was unrelated to their race or color, rendering NYSDHR’s contrary determination unsupported and hence arbitrary. (CPLR 7803 [3]; Polayes v City of New York, 118 AD3d at 426; East Riv. Hous. Corp. v New York State Div. of Human Rights, 116 AD3d at 563; Gutierrez v Rhea, 105 AD3d at 486.)
For these reasons, as further explained above, the court denies respondent Weston United’s motion to dismiss the petition to the extent the petition seeks to annul respondent NYSDHR’s finding of a lack of evidence that Weston United *454 discriminated against petitioner based on her race or color in two respects. (CPLR 3211 [a] [1]; 7804 [f].) That finding is arbitrary because it contradicts NYSDHR’s investigation report, which fails to negate inferences that Weston United did not (1) address residents’ racial slurs and discriminatory remarks toward petitioner or (2) treat grievances by whites and by African Americans equally and grievances about racial slurs and harassment equally with grievances unrelated to race. (CPLR 7803 [3].) The court otherwise grants the motion and dismisses the petition. (CPLR 3211 [a] [1]; 7804 [f].)
As no party indicates any incompleteness in respondent NYSDHR’s administrative record already presented, which respondent Weston United has used to support its motion, the court perceives no purpose in proceeding further in this forum with Weston United’s answer to the petition. (See CPLR 409 [b]; 7804 [f]; 7806; Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d 100, 102-103 [1984]; Matter of Applewhite v Board of Educ. of the City Sch. Dist. of the City of N.Y., 115 AD3d 427, 428 [1st Dept 2014]; Matter of Camacho v Kelly, 57 AD3d 297, 299 [1st Dept 2008].) If any party seeks to show such a purpose, that party may move, by an order to show cause, to restore this proceeding.
Otherwise, the court remands the proceeding to NYSDHR to consider all relevant evidence and make a determination adequately supported by the record as to whether Weston United discriminated against petitioner based on her race or color in two respects. (CPLR 7806.) Did Weston United discriminate against petitioner based on her race or color by failing to (1) address residents’ racial slurs and discriminatory remarks toward her or (2) treat grievances by whites and by African Americans equally and grievances about racial slurs and harassment equally with grievances unrelated to race? Although petitioner requests that NYSDHR undertake a further investigation, NYSDHR shall do so only to the extent NYSDHR finds a further investigation useful to a determination of Weston United’s racially disparate conduct in those two respects.