■ In the Matter of JONAS APONTE, Appellant, v SHOLA OLATOYE et al., Respondents. [30 NYS3d 29]—

Order, Supreme Court, New York County (Cynthia S. Kern,

J.), entered September 15, 2014, denying the petition seeking to annul a determination of respondent New York City Housing Authority (NYCHA), dated December 18, 2013, which dismissed petitioner's remaining family member (RFM) grievance on the ground that he did not qualify as an RFM, and dismissing the proceeding brought pursuant to CPLR article 78, reversed, on the law, without costs, the petition granted, the determination annulled, and the matter remitted to the Housing Authority for further proceedings in accordance with the following.

Petitioner's mother was the tenant of record of a one-bedroom apartment located in the Sedgwick Houses, a NYCHA-owned housing development. She resided in the apartment continuously from 1992 until her death on July 17, 2012.

In 2009, petitioner's mother was diagnosed with advanced dementia. Her disability rendered her mentally unstable and incapable of living alone, as noted in medical records submitted to the housing manager and at the hearing below. These notes indicated, inter alia, that it was "unsafe" for petitioner's mother "to live on her own," and that she needed "to be under constant supervision."

On or about August 24, 2010, NYCHA received a permanent permission request seeking to add petitioner as an occupant of his mother's apartment. The request was denied on the ground that allowing petitioner to live with his mother "will create overcrowding conditions." The case manager noted that "tenant is applying to have son live with her as her health is failing and she cannot live alone."

In January 2011, petitioner's mother submitted an affidavit of income which included petitioner as a tenant. The housing manager crossed out petitioner's name.

In February 2011, NYCHA reviewed a second permanent permission request to add petitioner as an occupant of the household. The request stated that petitioner's mother was "[s]uffering from dementia [and] cannot be alone." The request was disapproved, allegedly because the housing manager did not believe the form had been signed by petitioner's mother and the "son cannot request permissions and cannot sign for his mother."

In July 2012, petitioner informed the Sedgwick Houses management office that his mother had died and requested that he be permitted to lease the apartment. At a subsequent meeting with the housing manager, petitioner was informed

that he was never part of the household and was never given written permission to join the household. In April 2013, NYCHA commenced a holdover proceeding against petitioner. The proceeding was adjourned while petitioner appealed the denial of his request for RFM status.

At the hearing, petitioner submitted evidence concerning his mother's health condition and her requests for petitioner to permanently join the household.

The hearing officer found that petitioner's mother was the sole authorized occupant of the subject apartment and denied petitioner's grievance, stating "the grievant was never an authorized member of the tenant's household and did not obtain the written permission of [m]anagement to join tenant's household."

On April 17, 2014, petitioner commenced an article 78 petition challenging NYCHA's denial of his RFM grievance. Petitioner asserted that the denial of his application on the ground that his occupancy would create an "overcrowding" condition was arbitrary and capricious. He noted, furthermore, that NYCHA had been aware of his occupancy from August 2010 onward.

The petition was denied and dismissed on the ground that NYCHA had a reasonable basis for its decision—namely, that petitioner had failed to obtain written consent to be added as a member of his mother's household. The court further found that petitioner lacked standing to assert a disability claim on behalf of the tenant of record responsible for obtaining NYCHA's permission to add petitioner to the household. We now reverse.

Petitioner has standing to bring an article 78 proceeding to challenge a denial of succession rights to a public housing apartment (see Matter of Gutierrez v Rhea, 105 AD3d 481 [1st Dept 2013], lv denied 21 NY3d 861 [2013]). Petitioner is not asserting a disability claim on his mother's behalf, as in the cases relied on by NYCHA (see e.g. Matter of Filonuk v Rhea, 84 AD3d 502 [1st Dept 2011]); rather, he is challenging NYCHA's denial of his application for RFM status.

We note, in any event, that under the New York City Human Rights Law, the person claiming a failure to accommodate a disability need not be the person to whom the accommodation was not provided. The statute expressly grants standing to persons who have been discriminated against by their association with a disabled individual (Administrative Code of City of NY § 8-107 [20]).

Respondent's determination denying petitioner succession

rights to his mother's apartment was arbitrary and capricious. Petitioner's mother submitted multiple applications to add petitioner to the lease as required by 24 CFR 966.4 (a) (1) (v). The first application was denied on the ground that adding petitioner to the household "will create overcrowding"; the second, not on that basis but allegedly because petitioner signed the application on his disabled mother's behalf. NYCHA never considered evidence of petitioner's mother's disability in denying the applications.

The ground proffered for the denial, i.e., that adding petitioner to the household would result in overcrowding, creates an unacceptable Catch-22—a request to add an additional family member will almost always result in overcrowding unless NYCHA fails simultaneously to consider transferring the applicant to a larger apartment. NYCHA guidelines provide that an "overcrowded" apartment should not result in a summary denial of the RFM's claims; rather, the housing manager should inform the new tenant that he may submit a request to transfer to a new apartment.

NYCHA asserts that had it considered petitioner's mother's request, any duties it owed toward the mother would have been satisfied by according petitioner the status of "temporary occupant," i.e., a person not entitled to succession rights.

We can never know what would have constituted a reasonable accommodation of petitioner's mother's disability under the circumstances. Neither petitioner nor his mother was afforded a meaningful opportunity to demonstrate what would constitute a reasonable accommodation under the circumstances. NYCHA's determination cannot be deemed rational in light of the absence of a proper inquiry and an opportunity to be heard on the issue (compare Matter of Chun Po So v Rhea, 106 AD3d 487 [1st Dept 2013] [petitioner's disability was reasonably accommodated by an offer to permit her adult daughter to reside in the apartment on a temporary basis]).

Petitioner, moreover, was residing in the subject apartment with NYCHA's knowledge for years before NYCHA instituted proceedings to evict him. While estoppel is not available against a government agency in the exercise of its governmental functions, NYCHA's knowledge that a tenant is living in an apartment is an important consideration in the determination of a subsequent application for RFM status (see Gutierrez, 105 AD3d at 485; Matter of McFarlane v New York City Hous. Auth., 9 AD3d 289, 291 [1st Dept 2004]), as even the dissent recognizes.

The dissent notes that NYCHA de facto accommodated

petitioner's mother's disability by knowingly permitting petitioner to remain in the apartment, yet sanctions NYCHA's policy whereby requests to add family members are inevitably denied because of overcrowding. The dissent faults petitioner's mother for failing to request a reasonable accommodation for her disability, overlooking the fact that her dementia likely precluded her from fully apprehending the nuances of NYCHA's regulations. We are compelled to disagree. Concur—Renwick, Andrias and Manzanet-Daniels, JJ.

Tom, J.P., and Moskowitz, J., dissent in a memorandum by Tom, J.P., as follows: In this CPLR article 78 proceeding, petitioner seeks to annul a determination of respondent New York City Housing Authority (NYCHA), dated December 18, 2013, which dismissed his remaining family member (RFM) grievance on the ground that he did not qualify as an RFM. Because NYCHA's denial of petitioner's grievance has a rational basis—the evidence adduced at the administrative hearing shows that NYCHA never granted written permission for petitioner to reside in the tenant of record's apartment—I would affirm Supreme Court's denial of the petition and dismissal of the proceeding (see *Rosello v Rhea*, 89 AD3d 466, 466 [1st Dept 2011]).

Petitioner's mother, the late Victoria Aponte, was the sole tenant of record in the one-bedroom apartment at 150 West 174th Street. Victoria lived in the apartment from February 1992 until her death on July 17, 2012. In or around 2009, Victoria had been diagnosed with advanced dementia which made it unsafe for her to live alone. For that reason, petitioner moved into the apartment to assist his mother.

Although NYCHA received in August 2010 a permanent permission request seeking permission to add petitioner as a permanent resident of the apartment, the request was denied because adding petitioner to the one-bedroom apartment would "create overcrowding conditions" in violation of NYCHA's occupancy standards. In particular, NYCHA's occupancy standards do not permit an additional person to permanently join a household in a one-bedroom apartment unless that person is a spouse, domestic partner, or child under the age of six (see *Matter of Chun Po So v Rhea*, 106 AD3d 487, 488 [1st Dept 2013]; *Matter of Bashmet v Hernandez*, 87 AD3d 866, 866 [1st Dept 2011]).

On January 4, 2011, Victoria submitted her annual affidavit of income, listing petitioner as a person living in the apartment. On the second page, under the heading "Disability Status and Notice of Reasonable Accommodation," the form stated:

"The New York City Housing Authority will provide reasonable accommodation to meet the needs of persons with disabilities. A reasonable accommodation may include a modification to your apartment, common areas in and around your apartment building, development grounds, certain NYCHA programs and facilities, or transfer to another unit. The Housing Authority may require you to provide documentation to support your claim for a reasonable accommodation. If conditions change after you submit this form, you may fill out and submit a new form. If you need an explanation of disabilities or reasonable accommodations, information regarding the rights of persons with disabilities, or help in completing this form, you may contact your development's management office or the NYCHA Department of Equal Opportunity, Services for the Disabled at 212-396-4652 or TDD 212-306-4445."

Victoria stated that she suffered from a "mental or psychological disability," namely, Alzheimer's disease and dementia. However, she nonetheless checked the box stating that, although she had a disability, she was "*not* requesting the Housing Authority to provide any accommodation at this time." Upon reviewing the affidavit, the housing manager crossed petitioner's name off of it because he was not an authorized resident of the apartment. The housing manager explained to Victoria that "she could not add her son to [the] family comp[osition] as it would create overcrowded living conditions." He also sent Victoria a lease addendum and rent notice, which, among other things, advised her that, other than herself, "no other person is permitted to reside permanently in the household unless the Housing Manager grants you WRITTEN PERMISSION to add that person to your household."

Then, in February 2011, NYCHA disapproved a second permanent permission request to add petitioner as an occupant of the household on the ground that petitioner had signed the form for his mother and could not request permission on her behalf.

After Victoria's death, petitioner went to the management office, informed them of her death, and stated that "he would like to keep his mother's apartment." Petitioner was given a RFM grievance form and told to request a meeting with the project manager to discuss the issue. On August 17, 2012, petitioner met with the project manager, who denied his RFM grievance, explaining that "he was never part of the household and was never given written permission to join the household." On January 23, 2013, petitioner met with the Bronx borough manager and on February 1, 2013, the borough manager

concurred with the project manager's determination, denying the grievance.

In November 2013, a hearing was held on petitioner's grievance. The hearing officer denied the grievance, finding that the "evidence presented at this hearing establish[es] the [petitioner] was never an authorized member of [Victoria's] household and did not obtain the written permission of Management to join." The hearing officer added that while petitioner "is a sympathetic individual and may have moved into the apartment to assist his elderly mother . . . he did not have NYCHA's permission to reside in the apartment."

Contrary to the majority's holding, I would find that NYCHA's denial of petitioner's grievance has a rational basis and was not arbitrary and capricious. The record reflects that petitioner never received written consent to reside in the apartment, and that he was not an authorized occupant of the apartment for a one-year period before his mother's death (*see Matter of Echeverria v New York City Hous. Auth.*, 85 AD3d 580, 581 [1st Dept 2011]). Further, as the majority recognizes, NYCHA may not be estopped from denying RFM status, even if it was aware of petitioner's occupancy (*Rosello*, 89 AD3d at 466).

Contrary to the majority's suggestion, the fact that NYCHA properly denied multiple applications to add petitioner to the lease does not make its determination denying petitioner's grievance arbitrary and capricious. Petitioner's mother was repeatedly made aware that she could not add petitioner to her household because it would create overcrowding. She was also given the opportunity to request a reasonable accommodation for her disability but she opted not to do so. Thus, NYCHA cannot be faulted for failing to consider transferring petitioner's mother to a larger apartment. Nor is there an "unacceptable Catch-22" situation as the majority posits; petitioner's mother could have avoided any such problem by simply requesting a transfer or other reasonable accommodation. There is nothing in the record supporting the majority's speculation that petitioner's mother's dementia precluded her from making a request for accommodation, and, in any event, the record shows that petitioner aided his mother in filling out the forms. In fact, petitioner testified that he moved into the apartment in mid-2009 and that he filled out and signed the January 2011 permanent permission request form, and other documents, because his mother didn't "speak English" or "know how to write even."

To the extent petitioner is asserting a reasonable accom-

modation claim, petitioner lacks standing to assert such a claim on behalf of his mother, the tenant of record (*see Rosello*, 89 AD3d at 467; *Matter of Filonuk v Rhea*, 84 AD3d 502, 503 [1st Dept 2011]).

Moreover, petitioner's claim for associational discrimination, which, as the majority points out, is permitted under the New York City Human Rights Law (Administrative Code of City of NY § 8-107 [20]) is unavailing. Petitioner failed to show that he suffered any injury causally attributable to any alleged failure by NYCHA to reasonably accommodate his mother's disability (*see Filonuk v Rhea*, 84 AD3d at 503).

In any event, NYCHA could not have accommodated his mother's disability by making petitioner a permanent resident, since this would have created overcrowding in violation of the agency's occupancy standards (*Chun Po So*, 106 AD3d at 488). Moreover, to have made petitioner a "permanent tenant in the household" would have "unfairly provide[d] a windfall to [him] to the detriment of other potential tenants" (*id.*). Although NYCHA could have reasonably accommodated his mother's need for live-in care by granting petitioner temporary residency (*see id.*), his mother never requested this accommodation and, in any event, petitioner in fact lived in the apartment and cared for his mother until her death.

I disagree with the majority's statement that "[w]e can never know what would have constituted a reasonable accommodation." In *Chun Po So*, the petitioner had a disability requiring "essentially 24-hour care." We found that her disability was reasonably accommodated by the offer to permit her adult daughter to reside in the apartment on a temporary basis. Similarly, here we can state that, had she requested it, petitioner's mother's disability could have been reasonably accommodated by granting petitioner temporary residency, and further that her disability was accommodated de facto by NYCHA knowingly permitting petitioner to remain in the apartment. The majority fails to demonstrate why petitioner's mother's disability was not accommodated by this temporary residency, or why a permanent occupancy, entitling petitioner to succession rights, was required.

Finally, the fact that NYCHA had knowledge of petitioner residing in the apartment for years does not warrant awarding petitioner succession rights. NYCHA's knowledge that he was living in an apartment for a substantial period of time is only one component of the determination of a subsequent RFM application (*see Matter of Gutierrez v Rhea*, 105 AD3d 481, 485 [1st Dept 2013], *lv denied* 21 NY3d 861 [2013]), and is not

determinative.