■ In the Matter of ARIELLE FIGUEROA, Respondent, et al., Petitioner, v NEW YORK CITY HOUSING AUTHORITY, Appellant. [35 NYS3d 338]—

Judgment, Supreme Court, New York County (Peter H. Moulton, J.), entered May 20, 2015, granting the petition to annul respondent's determination, dated September 10, 2013, which dismissed petitioner's remaining family member grievance for failure to pay use and occupancy, and directing respondent New York City Housing Authority (NYCHA) to process petitioner's grievance, affirmed, without costs.

The CPLR article 78 court and this Court may review NYCHA's actions in this case to determine whether the agency failed to perform a legal duty, or whether its determination was made "in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [1], [3]). An agency action is arbitrary and capricious "when it is taken without sound basis in reason or regard to the facts" (*Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009]). In reviewing an agency's application of its own regulations, courts " 'must scrutinize administrative rules for genuine reasonableness and rationality in the specific context presented by a case' " (*Matter of Murphy v New York State Div. of Hous. & Community Renewal*, 21 NY3d 649, 654-655 [2013], quoting *Kuppersmith v Dowling*, 93 NY2d 90, 96 [1999]).

The New York City Housing Authority Management Manual requires that a remaining family member grievant must remain current in use and occupancy to pursue the grievance (New York City Housing Authority [NYCHA] Management Manual, ch I, § XII [D] [2] [b]). This Court has upheld that requirement (*Matter of Garcia v Franco*, 248 AD2d 263, 265 [1st Dept 1998], *lv denied* 92 NY2d 813 [1998]). However, in this case, NYCHA's application of that rule to petitioner, and its resulting dismissal of her remaining family member grievance, was arbitrary and capricious. NYCHA failed and refused to recalculate use and occupancy based on petitioner's income, notwithstanding that the NYCHA Management Manual requires that it do so, during the pendency of a remaining family member grievance, in order for it to determine use and occupancy as the lower of the tenant of record's rent or the rent rate based on the income of the remaining occupant (NYCHA Management Manual, ch I, § XII [D] [2] [b]).[1] NYCHA also failed and refused to provide petitioner with information and documents necessary for her to apply for funds to pay the arrears in use and occupancy. As a result, it was impossible for petitioner to meet the condition precedent to a hearing.

This case is distinguishable from our decision in *Garcia*, since, there, NYCHA staff had offered to, and did, assist a remaining family member grievant in preparing an application to the Department of Social Services for financial assistance to

---

1. The dissent asserts that NYCHA is "under no obligation to recalculate and reduce the rental of a unit on behalf of an occupant who has not submitted proof or requested recalculation." This is simply not true in the case of a remaining family member grievant during the pendency of the grievance, according to the NYCHA Management Manual.

pay use and occupancy arrears (248 AD2d at 264). In contrast, here, there is no evidence that NYCHA ever offered to or did assist petitioner in her efforts to obtain financial assistance to pay use and occupancy arrears. NYCHA and the dissent assert that, at the proceedings before the NYCHA Hearing Officer, petitioner did not submit documentation of her claims that NYCHA staff: (1) declined to recalculate the use and occupancy based on her income, as the NYCHA Manual requires; (2) refused to provide her with documentation necessary for her to obtain financial assistance (including the exact sum due); and (3) refused to accept partial payment. However, NYCHA did not dispute those claims before the Hearing Officer, who included these facts in her decision, but then overlooked them in dismissing petitioner's grievance. Accordingly, NYCHA's actions in this case placed petitioner in a " 'Catch-22' situation" (*Garcia*, 248 AD2d at 264; *see also Matter of Aponte v Olatoye*, 138 AD3d 440, 443 [1st Dept 2016]), such that she could not proceed with her grievance hearing without paying use and occupancy, but she could not pay use and occupancy without information and documentation from NYCHA, and could not obtain a recalculation of use and occupancy based on her income, even though the NYCHA Management Manual requires this. The Hearing Officer's failure to consider these facts made the dismissal of petitioner's grievance arbitrary and capricious.

This Court appreciates NYCHA's efforts to fulfill its important mandate to provide decent, safe, and sanitary housing for low-income families in New York City, and its authority to promulgate and carry out standards and processes in keeping with federal law for determining eligibility for such housing (Public Housing Law § 2; 24 CFR 960.202 [a]). However, here, the result of NYCHA's rigid application of one rule while failing to follow others had the result of denying a hearing to a young single parent who alleges she lived much of her life in the subject apartment and whose child has allegedly always lived there. Assuming she proves her claims at the hearing, and meets income and other reasonable criteria, this result would do little to fulfill the agency's mandate. As the Court of Appeals has recently recognized, succession rules serve the statutory purpose of subsidized housing by "facilitat[ing] the availability of affordable housing for low-income residents and . . . temper[ing] the harsh consequences of the death or departure of a tenant for their . . . family members" (*Matter of*

*Murphy v New York State Div. of Hous. & Community Renewal*, 21 NY3d at 653).[2]

The article 78 court need not have reached the due process issue, since NYCHA had already determined that petitioner was entitled to a hearing on her grievance, but denied it solely because she failed to pay use and occupancy.

Although the merits are not before us, we will address them because the dissent has done so. From the record on this appeal, it appears that petitioner has made a prima facie "reasonable showing" that she resided in the subject apartment with NYCHA's knowledge, and may, therefore, qualify for remaining family member status (*Matter of Henderson v Popolizio*, 76 NY2d 972, 974 [1990]). As this Court has previously held, "[W]hile estoppel is not available against a government agency engaging in the exercise of its governmental functions . . . NYCHA's knowledge that a tenant was living in an apartment for a substantial period of time can be an important component of the determination of a subsequent [remaining family member] application" (*Matter of Gutierrez v Rhea*, 105 AD3d 481, 485 [1st Dept 2013], *lv denied* 21 NY3d 861 [2013]; *see also Henderson*, 76 NY2d at 974; *Matter of McFarlane v New York City Hous. Auth.*, 9 AD3d 289, 291 [1st Dept 2004]). The Court of Appeals, citing the NYCHA Management Manual, has held that a person who makes a "reasonable showing" of residency in a NYCHA unit with a family member for a substantial period of time with NYCHA's knowledge or permission is entitled to a hearing on remaining family member status (*Henderson v Popolizio*, 76 NY2d at 974, citing NYCHA Management Manual, ch VII, subd E [1] [a]; *see also Matter of Russo v New York City Hous. Auth.*, 128 AD3d 570, 571 [1st Dept 2015] [noting that certain circumstances may relieve a remaining family member claimant of the requirement of written consent to occupancy]; *Matter of McFarlane*, 9 AD3d at 291 [NYCHA's knowledge that a remaining family member claimant has lived in the unit for a substantial period of time without written permission is an important component of determination of remaining family member status]). Indeed, the Manual specifically cites " '[e]ntries in the tenant folder that permission to reside in the household was requested' " as

2. The dissent attempts to distinguish *Murphy* from this case, noting, inter alia, that *Murphy* involved Mitchell-Lama housing, rather than NYCHA. However, we reference *Murphy* only with regard to its discussion of the purpose of succession rules and the standard of review of administrative determinations.

an example of a "reasonable showing" that a person is residing in NYCHA housing with NYCHA's knowledge or permission (*Henderson*, 76 NY2d at 974, quoting NYCHA Management Manual, ch VII, subd E [1] [b]).

Petitioner's claim in this matter is virtually identical to that of the petitioner in *Gutierrez v Rhea*, in which this Court determined that NYCHA's failure to notify the petitioner or his mother that their application to add him to his mother's lease had been denied, and failure to evict the petitioner following the denial, entitled the petitioner to a hearing on remaining family member status after his mother's death (*Gutierrez*, 105 AD3d at 485). Here, petitioner has consistently claimed, and submitted documentation supporting her claim,[3] that she lived in the subject apartment with her grandmother from in or about 2003, when petitioner was approximately 14, until her grandmother passed away on February 25, 2012, and has remained in the apartment since.[4] Petitioner has further consistently claimed that the subject apartment is the only home her son, born in 2008, has ever known; in fact, his birth certificate lists the subject apartment as petitioner's address. Petitioner claims that she believed, until on or about June 6, 2012, that NYCHA had granted her and her son permanent resident status. This claim is supported by the record, which contains no documentation indicating that petitioner or her grandmother were ever notified of NYCHA's denial of either of her grandmother's two 2008 requests to add petitioner and her son as permanent residents of the subject apartment, and no claim or indication that NYCHA ever commenced administrative proceedings to terminate the tenancy following either denial of her grandmother's requests, as required by the

---

3.  The dissent's assertion that petitioner's claim that she resided in the apartment for a number of years with her grandmother is supported only by her "bare assertion" is wrong. The applications to add her to the household, as well as her son's 2008 birth certificate, her employment documents from 2006-2012, and a handwritten letter from her grandmother dated September 21, 2009 also support her claims.

4.  The dissent notes that the Project Grievance Summary, which records NYCHA's first level review denial of petitioner's remaining family member grievance, alleges that petitioner's grandmother was "listed . . . as a single occupant of her apartment from 2005 until her death in 2012." However, none of the tenant affidavits are included in the record, and the Project Grievance Summary also erroneously states that petitioner's grandmother never sought permission for petitioner to reside with her. That statement is flatly contradicted by the two additional family member request forms dated April and December 2008, which are in the record, as the dissent acknowledges.

Management Manual.[5] To be clear, we do not hold that petitioner has proved her claims; only that she has made a sufficient "reasonable showing" to entitle her to prove them at a hearing.

The dissent claims that such a hearing would be "futile" because petitioner and her grandmother never obtained written permission for petitioner to reside in the apartment, citing, inter alia, *Matter of Hawthorne v New York City Hous. Auth.* (81 AD3d 420, 421 [1st Dept 2011]). However, neither that case nor any of the others cited by the dissent involved petitioners who claimed or proved that they resided with a relative who was a primary tenant, with NYCHA's knowledge, for a substantial period of time prior to the tenant's death, as in this case. The cases cited by the dissent involved legitimate reasons for denial of remaining family member status, other than the bare fact that NYCHA had not given written permission for the petitioner to reside in the unit, including lack of a qualifying relationship to the primary tenant (*id.*), and failure to meet the requirement of one year or more of residency prior to the primary tenant's death or departure (*Matter of Diop v New York City Hous. Auth.*, 135 AD3d 665 [1st Dept 2016]; *Matter of Vereen v New York City Hous. Auth.*, 123 AD3d 478 [1st Dept 2014]; *Matter of Adler v New York City Hous. Auth.*, 95 AD3d 694 [1st Dept 2012], *lv dismissed* 20 NY3d 1053 [2013]; *Rosello v Rhea*, 89 AD3d 466 [1st Dept 2011]; *Matter of Echeverria v New York City Hous. Auth.*, 85 AD3d 580 [1st Dept 2011]; *Matter of Torres v New York City Hous. Auth.*, 40 AD3d 328 [1st Dept 2007]). Some of the cases cited by the dissent explicitly acknowledge that whether NYCHA "knew or implicitly approved" of the petitioner's residency, even in the absence of written consent, is a consideration where the petitioner had not obtained written permission to reside in the unit (*Echeverria*, 85 AD3d at 581; *Matter of Filonuk v Rhea*, 84 AD3d 502, 503 [1st Dept 2011]). Furthermore, the petitioners in at least four of the cases cited by the dissent were granted a remaining family member grievance hearing, even though they did not have written permission to reside in the subject apartment (*see Diop*, 135 AD3d at 665; *Vereen*, 123 AD3d at 478; *Matter of*

---

**5.** The NYCHA Management Manual provides that the housing manager "indicates his/her decision . . . on the Permanent Residency Permission Request form . . . and returns a copy to the tenant" (NYCHA Management Manual, ch I, § XI [B] [2] [b] [3]). It further provides that, if additional persons in the household fail to vacate within 15 days after notification of denial of such a request, "staff will commence administrative proceedings to terminate the tenancy" (NYCHA Management Manual, ch I, § XI [B] [2] [b] [5]).

*Abdil v Martinez*, 307 AD2d 238 [1st Dept 2003]; *Matter of Kolarick v Franco*, 240 AD2d 204 [1st Dept 1997]).[6] The dissent cites to *Rosello* for the proposition that NYCHA "may not be estopped from denying [remaining family member] status even if it . . was aware of petitioner's occupancy" (*Rosello*, 89 AD3d at 466). However, *Rosello*, like the Court of Appeals case on which it relies, *Matter of Schorr v New York City Dept. of Hous. Preserv. & Dev.* (10 NY3d 776 [2008]), involved a petitioner who failed to meet the requirement that she reside with the primary tenant for a particular length of time prior to the tenant's death or departure in order to qualify for remaining family member status. That is not the case here. Accordingly, the dissent's belief that the absence of written permission from NYCHA to reside in the unit ends the inquiry is incorrect.

Under the circumstances of this case, NYCHA's dismissal of the grievance before a hearing on the merits was arbitrary and capricious, and the proceeding is remitted to NYCHA for a hearing. Petitioner shall cooperate with NYCHA so that it can set use and occupancy at the lower of the rent paid by her grandmother, or a rent rate based on her verified current income (NYCHA Management Manual, ch I, § XII [D] [2] [b]), and petitioner shall pay use and occupancy at the rate then set pending the determination of her grievance. In view of this decision, the article 78 court's holding that petitioner had a due process right to a hearing is rendered academic. Concur—Acosta, Richter, Manzanet-Daniels and Gesmer, JJ.

Tom, J.P., dissents in a memorandum as follows: In this CPLR article 78 proceeding, petitioner seeks to annul a determination of respondent New York City Housing Authority (NYCHA), dated September 10, 2013, which dismissed her remaining family member (RFM) grievance on the ground that she was not current in use and occupancy and thus was not entitled to a third-tier administrative hearing on her claim. Because NYCHA's dismissal of petitioner's grievance has a rational basis—petitioner failed to pay outstanding use and occupancy charges as required by respondent NYCHA's rule (New York City Housing Authority [NYCHA] Management Manual, ch VII, § IV [E] [1] [c] [2]) and the evidence in the record shows that NYCHA never granted written permission for petitioner to reside in the tenant of record's apartment—I would reverse

---

**6.** Abdil and *Matter of Kolarick* also predate this Court's decision in *Matter of McFarlane*, in which we recognized that "a showing that the Authority knew of, and took no preventive action against, the occupancy by the tenant's relative, could be an acceptable alternative for compliance with the notice and consent requirements" (9 AD3d at 291).

Supreme Court's grant of the petition and would dismiss the proceeding (*see Matter of Henderson v Popolizio*, 76 NY2d 972 [1990]; *Matter of Garcia v Franco*, 248 AD2d 263 [1st Dept 1998], *lv denied* 92 NY2d 813 [1998]).

Petitioner's grandmother, the late Jovita Texidor, was the sole tenant of record in the subject apartment at 1365 Fifth Avenue. Texidor lived in the apartment from at least January 2002 until her death on February 25, 2012. According to the Project Grievance Summary, dated October 4, 2012, Texidor listed herself as a single occupant of her apartment from 2005 until her death in 2012. Petitioner alleged she had moved into Texidor's apartment in 2003 and was under the impression that her grandmother had added her to the family composition, yet the report stated that Texidor never obtained permission for petitioner to be added to her household.

Petitioner filed a RFM grievance in 2012 to determine whether she qualified to succeed to Texidor's lease. As is provided in NYCHA's Management Manual, but without regard to whether petitioner had paid use and occupancy for the apartment, petitioner was granted an informal hearing before the project manager. The project manager determined that petitioner was not a legal occupant of the apartment because she was never part of the family composition and had not obtained NYCHA's permission to live in the household, and that management had no knowledge of her residing in the apartment. He thus concluded she was not eligible to succeed to the lease.

Petitioner was then granted a second opportunity to be heard on the claim before the borough manager, who agreed with the disposition of the project manager but permitted petitioner to appeal to a hearing officer, which she did. Petitioner was notified on January 11, 2013 that her request for a hearing was granted, that she had the right to present witnesses and to be represented by counsel. She was warned that the Hearing Officer reserved the right to dismiss the grievance "in the event that you are not up to date in payment of the appropriate rent or use and occupancy at the time of the hearing."

Although the hearing was initially scheduled for April 12, 2013, it was adjourned to May 15, 2013. On that day, petitioner appeared before the Hearing Officer. NYCHA moved to dismiss petitioner's grievance because she was not current in her payment of use and occupancy. The evidence in the record shows that at the time petitioner owed $1,941.60 at the rate of $323.60 per month, for a total of six months, and she had made only one payment of $323.60 in the seven months prior to the

hearing. Petitioner stated she had the money to pay the outstanding rent but had not paid it because she believed her mother had done so.

The Hearing Officer adjourned the hearing to June 27, 2013 in order to give petitioner time to get an attorney and to make payment of use and occupancy. She also explained to petitioner that "[p]aying use and occupancy gives you the right to present the case to me" and instructed that "if you want a hearing and if you want to pursue your claim, the use and occupancy has to be paid."

The hearing was adjourned again to August 20, 2013. On that day, petitioner had still not paid the use and occupancy and the balance had risen to $2,912. The Hearing Officer reminded petitioner that she had been given an adjournment to pay the use and occupancy and consult with an attorney. Petitioner, who was still pro se, agreed.

The Hearing Officer then stated that NYCHA was again moving to dismiss the grievance on the grounds that the use and occupancy had not been paid. Petitioner stated that she "lost [her] job at that time," and prior to that she brought pay stubs to see if the rent could be minimized based on what she was making from December to February, and her request was declined. Petitioner stated that she got a job that July that makes enough money to pay the current amount, and that she had to go on the 26th to obtain her checks. Petitioner brought no documentation in support of her claims.

Petitioner was sworn in, and testified that she made one payment on April 6th, which was the last time she had a job. She became employed again in July and stated that she was trying to get a "one-shot deal on August 26th for the amount of $2000" and that she had the other $912. Notably, the only documents that petitioner submitted at her hearing were documents showing she had applied for assistance from the Human Resources Administration (HRA), not documents showing HRA had approved a "one-shot deal." There is no documentation in the record to support petitioner's bare allegations that NYCHA refused to recalculate her use and occupancy based on her income, would not accept partial payments and did not provide petitioner with the documentation regarding the monies owed, or that it did not consider her application for financial relief including a "one-shot deal."

The Hearing Officer dismissed petitioner's grievance based on her failure to pay use and occupancy. NYCHA issued its final determination on September 10, 2013, dismissing the grievance.

The NYCHA Management Manual requires that a person seeking RFM status must remain current in use and occupancy to pursue a grievance or be entitled to a third-tier administrative hearing (NYCHA Management Manual, ch I, § XII [D] [2] [b]; [5] [b]). This requirement has been upheld by the Court of Appeals and this Court (*see Matter of Henderson*, 76 NY2d at 974; *Matter of Hawthorne v New York City Hous. Auth.*, 81 AD3d 420, 420-421 [1st Dept 2011]; *Garcia*, 248 AD2d at 264).

Here, the evidence established that petitioner failed to remain current in her payment of use and occupancy, despite repeated written and in-person warnings of the requirement to do so, and despite being given at least eight months to pay the use and occupancy owed. Accordingly, NYCHA's determination was made on a rational basis.

Initially, the majority's focus on the purported merits of petitioner's grievance sidesteps the central issue raised by this appeal, namely, whether NYCHA rationally dismissed petitioner's grievance for failure to be current in use and occupancy. This is not surprising since the inquiry as to the use and occupancy requirement is not in the majority's favor. The simple fact is that despite being given repeated opportunities and significant time to pay the outstanding use and occupancy petitioner failed to do so. Thus, dismissal of the grievance was rational.

It is significant to note that petitioner was given two opportunities to present her claim at two informal hearings as well as ample time to work out payment of use and occupancy in advance of the formal hearing. Yet, petitioner made only one payment in the nine months prior to the dismissal date, and although she offered to pay $912 and admitted at her hearing that with her new job, she had "enough money to pay [the Housing Authority] the amount that they were asking for," petitioner nevertheless has not made a single payment since April 2013. What makes the majority believe petitioner will pay use and occupancy at this point?

Contrary to the majority's contention, the application of the rule requiring payment of use and occupancy to petitioner was not arbitrary and capricious. Nor can NYCHA's upholding of the rule be considered unfairly "rigid." To the contrary, petitioner was given multiple chances and lengthy adjournments in order to enable her to pay use and occupancy. She failed to do so.

Nor is this case distinguishable from our decision in *Garcia*. As in *Garcia*, petitioner was warned of the requirement to pay use and occupancy and there is no evidence in this record about

whether NYCHA offered to assist petitioner in preparing an application for financial assistance. The record evidence only shows that petitioner applied to the HRA for assistance.

However, the majority relies on petitioner's unsubstantiated and unsupported claims that NYCHA failed and refused to recalculate use and occupancy based on her income so as to reduce the rent affordable to petitioner, and failed and refused to provide petitioner with information and documents necessary for her to apply for funds to pay the arrears. This is a meritless claim since NYCHA is under no obligation to recalculate and reduce the rental of a unit on behalf of an occupant who has not submitted proof or requested recalculation. Petitioner submitted no documentation or other evidence to corroborate her bare claim that NYCHA refused to recalculate use and occupancy (*see* NYCHA Management Manual, ch I, § XII [D] [2]). Moreover, a recalculation may even show that petitioner, with income, may be charged a higher rate of use and occupancy than the deceased tenant's last rent. In fact, it appears the majority would require NYCHA to disprove allegations that have not been proved by petitioner in the first instance, an impossible standard. While the majority faults the Hearing Officer for mentioning these allegations and not crediting them, the Hearing Officer had a rational basis to reject these claims, namely, petitioner failed to provide documentation or any admissible proof to support any of the claims. Although petitioner included a letter from her employer and a W-2 statement as exhibits to her article 78 pleadings, NYCHA asserts that petitioner did not present these documents at the hearing or actually provide any evidence that the documents had been submitted to management for review. Further, the only documents that petitioner submitted at her hearing were documents showing she had applied for assistance from HRA, not documents showing HRA had approved a "one-shot deal." On appeal, she now claims that she received a one-shot deal from the HRA, but NYCHA would not accept the check. However, contrary to her present claim, petitioner asserted in her article 78 pleadings that HRA denied her request for assistance with repayment of her arrears. There is absolutely no proof to show that HRA ever approved a one-shot deal or that NYCHA refused to accept the check, other than her inconsistent statements. Accordingly, there is nothing in the record to support a finding that NYCHA's actions placed petitioner in a " 'Catch-22' situation" (*Garcia*, 248 AD2d at 264).

In any event, in *Garcia* this Court rejected the idea that a petitioner who does not receive assistance from HRA was

caught in a "Catch-22" situation, holding "what may be required of a lawful tenant in residence may, a fortiori, also be required of a possibly illegal occupant who would prefer to live rent free while litigating her right to possession through the 3-tiered administrative review process and into the courts" (*Garcia*, 248 AD2d at 265). Here, petitioner has offered no evidence that would entitle her to RFM status before two levels of administrative reviews.

The majority's reliance on *Matter of Murphy v New York State Div. of Hous. & Community Renewal* (21 NY3d 649 [2013]) is entirely misplaced. Initially, *Murphy* concerns Mitchell-Lama housing, and not housing administered by NYCHA, which is a separate housing program with different rules and requirements. More specifically, the Mitchell-Lama program does not contain the written permission requirement contained in NYCHA's Management Manual (*see Murphy*, 21 NY3d at 653). Further, *Murphy* concerned the petitioner's mother's "technical noncompliance for a single year" (*id.* at 655) to file an income affidavit, and did not concern the requirement to pay use and occupancy, a requirement that has been repeatedly upheld by the courts. The requirement to pay use and occupancy is not impacted by *Murphy*'s instruction that succession rules in subsidized housing are meant to "facilitate the availability of affordable housing for low-income residents and to temper the harsh consequences of the death or departure of a tenant for their . . . family members" (*id.* at 653). Nor is this a case where a hyper-technical application of the law prevents an otherwise meritorious claimant from obtaining succession rights as a RFM (*see id.* at 653-655).

The majority's assertion that the Court of Appeals has held that a person who makes a "reasonable showing" that he or she has been residing with the tenant of record for a substantial period of time with NYCHA's knowledge is entitled to a grievance hearing (citing *Henderson* at 974) is inaccurate. In this regard, the majority conspicuously fails to fully quote *Henderson* and conveniently ignores that *Henderson* and NYCHA's Management Manual (ch VII, subd E [1] [b]) also require a petitioner to "continue to pay 'use and occupancy' after the tenant's death" (*Henderson* at 974), a condition precedent petitioner clearly failed to meet. Thus, regardless of the merits of petitioner's claim regarding her residency, she has not made a reasonable showing that she continued to pay use and occupancy, and she is not entitled to a hearing.

In addition, NYCHA policy requires a tenant to make a written request to the manager to have a relative or other family

member become either a legally authorized permanent household member or a cotenant. Thus, to qualify as a RFM, one must have obtained written permission from NYCHA to reside in the apartment (*see* NYCHA Management Manual, ch VII, subd E [1] [a]). This policy has been consistently enforced by this Court as far back as our holding in *Matter of Kolarick v Franco* (240 AD2d 204 [1st Dept 1997]) and has been repeatedly upheld since that time (*see Matter of Diop v New York City Hous. Auth.*, 135 AD3d 665 [1st Dept 2016]; *Matter of Vereen v New York City Hous. Auth.*, 123 AD3d 478 [1st Dept 2014]; *Matter of Adler v New York City Hous. Auth.*, 95 AD3d 694 [1st Dept 2012], *lv dismissed* 20 NY3d 1053 [2013]; *Matter of Echeverria v New York City Hous. Auth.*, 85 AD3d 580, 581 [1st Dept 2011]; *Matter of Filonuk v Rhea*, 84 AD3d 502 [1st Dept 2011]; *Matter of Torres v New York City Hous. Auth.*, 40 AD3d 328 [1st Dept 2007]; *Matter of Abdil v Martinez*, 307 AD2d 238 [1st Dept 2003]).

Even assuming arguendo that petitioner was entitled to a third hearing, such a hearing would indeed be futile because petitioner never obtained written permission to be part of the household (*Hawthorne*, 81 AD3d at 421) and was never named on affidavits of income for the household. Chapter I, section XII [A] [1] of the NYCHA Management Manual sets forth that in order to acquire RFM succession rights a person must have "lawfully enter[ed]" the apartment by, inter alia, obtaining written permission from the housing manager. In addition, the Management Manual requires an RFM claimant to show "continuous occupancy" for not less than one year before the tenant vacates the apartment or dies. To show continuous occupancy, the claimant must be named on all affidavits of income from the time she or he lawfully entered the apartment (NYCHA Management Manual, ch I, § XII [A] [2]). Petitioner could never meet these standards. Further, as noted, even if NYCHA had knowledge that petitioner was residing in the apartment, it cannot be estopped from enforcing its rules (*see Matter of Schorr v New York City Dept. of Hous. Preserv. & Dev.*, 10 NY3d 776, 779 [2008] ["It is well settled that estoppel cannot be invoked against a governmental agency to prevent it from discharging its statutory duties" (internal quotation marks omitted)]; *Rosello v Rhea*, 89 AD3d 466 [1st Dept 2011]).

The majority's reliance on *Matter of Gutierrez v Rhea* (105 AD3d 481 [1st Dept 2013], *lv denied* 21 NY3d 861 [2013]) is misplaced. In *Gutierrez*, no issue was raised regarding a grievance hearing and the failure to pay use and occupancy, which is the main issue in the present case. Nevertheless, unlike this

case, the evidence as to the petitioner's residence in *Gutierrez* was substantial and included that the tenant listed the petitioner and his income on multiple annual income affidavits for the apartment, and named him as a person living in the apartment. In addition, NYCHA violated a number of its own internal rules, failed to act on the application to add petitioner to the lease, and conducted a criminal background check on him but never notified him he had to vacate the apartment. Thus, the factual issues in *Gutierrez* are different from the instant case.

The majority incorrectly asserts that none of the cases I cite involve "petitioners who claimed or proved that they resided with a relative who was a primary tenant, with NYCHA's knowledge, for a substantial period of time prior to the tenant's death, as in this case." In fact, in *Henderson* the petitioner stated that he had been the tenant's common-law husband for many years, had signed the lease with her, and they both had resided in the apartment prior to her death (76 NY2d at 973). Further, other cases I cited from this Court involved petitioners who claimed to have lived in the apartment for years without written consent (*see e.g. Abdil v Martinez*, 307 AD2d at 240).

The fact that certain cases I cited involved petitioners who were granted a grievance hearing even though they did not have written permission to reside in the subject apartment is inconsequential, because, those cases did not involve the failure to pay use and occupancy which once again, is the central issue in the instant case (*see Diop*, 135 AD3d at 665 ["The fact that petitioner may have paid rent for the premises does not warrant a different determination"]; *Vereen*, 123 AD3d at 479 ["Petitioner's payment of use and occupancy cannot change an unauthorized occupant's status and cannot be deemed a substitute for written permission"]; *Kolarick*, 240 AD2d at 204 ["Nor is respondent estopped from denying petitioner tenancy status by having accepted rent from him after his mother died"]).

As for petitioner's due process claim, which the article 78 court found to have merit, the Court of Appeals' holding in *Henderson* controls and we are required to find no merit to the claim. As occurred in *Henderson*, petitioner in this case was given two levels of administrative review at informal hearings. The Court of Appeals found that NYCHA is not required to "grant a formal hearing to every person who makes a bare assertion that he or she is the [RFM] of a deceased tenant but is unable to make a preliminary showing that the claim is reason-

ably based" (76 NY2d at 974). Further, the Court of Appeals specifically found there had been no denial of due process where the petitioner had an informal hearing at which he "had the opportunity to present his side of the case," adding that "[f]undamental fairness does not require that he be afforded a third opportunity to be heard on the claim" (*Henderson*, 76 NY2d at 975). Similarly here, petitioner had two opportunities to be heard on her claim and thus was afforded due process.*

A third hearing on petitioner's claim would be futile as it is undisputed that she never obtained written permission to reside in the apartment and was not an authorized occupant of the apartment for a one-year period before her grandmother's death (*see Matter of Echeverria*, 85 AD3d at 581). Relatedly, the majority appears to conclude that NYCHA determined that petitioner was entitled to a hearing on her grievance because her claim had merit. However, there is nothing in the record to support such a conclusion.

Finally, the majority's direction that petitioner pay use and occupancy pending the determination of her grievance recognizes the validity of that requirement. However, at the same time the majority's holding fails to recognize NYCHA's rational and proper application of that rule to petitioner.

Accordingly, the petition should be denied and respondent's determination reinstated.

---

* It must be noted that Supreme Court's attempt to distinguish between the informal hearing afforded the petitioner in *Henderson* and what it refers to as the "informal settlement" given to petitioner in this case fails. While the informal first and second tier review afforded to petitioner in this case did not have the various safeguards of a formal hearing, there is nothing to indicate that the informal hearing provided in *Henderson* was any different, and NYCHA states that the informal hearing referenced in *Henderson* is the same informal hearing provided to petitioner here.