**Matter of Eron v Village E. Towers, Inc.**

2025 NY Slip Op 30703(U)

March 3, 2025

Supreme Court, New York County

Docket Number: Index No. 157881/2024

Judge: Paul A. Goetz

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    HON. PAUL A. GOETZ                                PART                          47

*Justice*

-------------------------------------------------------------------------------X

IN RE APPLICATION OF LEIGH ERON,

        Petitioner,

      - v -

VILLAGE EAST TOWERS, INC.,ADOLFO CARRION JR.,
THE NEW YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT

        Respondents.

-------------------------------------------------------------------------------X

| INDEX NO. | 157881/2024 |
| MOTION DATE | 11/22/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 10, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32

were read on this motion to/for    ARTICLE 78 (BODY OR OFFICER)   .

   In this Article 78 proceeding, petitioner seeks to vacate the determination of New York City Department of Housing Preservation and Development ("HPD"), Hearing Officer Frances Lippa's that she is not entitled to succession rights of Apartment 20G in the Village East Towers at 170 Avenue C, New York NY 10009 ("Apt. 20G")

## BACKGROUND

   Respondent, Village East Towers, Inc., ("Village East") is an Article II housing company organized under the Private Housing Finance Law of the State of New York, also known as the Mitchell-Lama Law which manages the Village East Towers at 170 Avenue C, New York NY 10009 (NYSCEF Doc No 1 ¶ 4). Barry and Mary Tolman were the tenants/cooperator residents of record under an Occupancy Agreement dated February 24, 1979 of Apt 20G in the Village East Towers (*id*. at ¶ 9). Barry Tolman passed away in 1995 and Mary Tolman resided in Apt 20G until she was admitted to a nursing home in February 2020, where she resided until her death on February 12, 2022 (*id*. at ¶ 10; NYSCEF Doc No 21). Petitioner, is the niece of Mary

**157881/2024   IN RE APPLICATION OF LEIGH ERON vs. VILLAGE EAST TOWERS, INC. ET AL**  **Page 1 of 9**
**Motion No.  001**

1 of 9

Tolman's daughter, Jill Tolman[1] (NYSCEF Doc No 1 ¶ 18). Petitioner moved to New York City in 2014 to attend a master's program and has lived in Apt 20G since then (*id*. at ¶ 11).

In March of 2023, petitioner filed an application for succession rights to Apt 20G, which was denied by a letter from Village East, dated September 11, 2023 (*id*. at ¶ 26 – 31). The September denial stated that the application had been denied because:

> Succession rights cannot be granted since proof of relationship has not been established between shareholder of record Mary Tolman (Great-Aunt) and Leigh Eron.
>
> Also, co-residency has not been established between Mary Tolman and Leigh Eron for calendar years 2021 and 2020.
> (NYSCEF Doc No 3 at p 12).

It further stated that petitioner could appeal by writing to Myisha Johnson, an Appeals Officer at HPD, within 30 days, which petitioner did on October 9, 2023 (*id*. at ¶ 33). However, on December 15, 2023, Village East, through its attorneys sent a second letter denying succession rights (*id*. at ¶ 35). The second denial letter made no references to the first denial letter, nor did it reference the October 9, 2023 appeal (NYSCEF Doc No 4). Instead, the letter informed petitioner that she may appeal the denial to HPD Administrative Hearing Officer, Frances Lippa, within 30 days, which petitioner did on February 21, 2024[2] On June 12, 2024 the Hearing Officer issued her decision denying petitioner's appeal finding petitioner failed to establish that she and Mary Tolman were "family members" pursuant to 28 § RCNY 3-02 (p)(2)(ii)(B) (NYSCEF Doc No 2).

---

[1] Petitioner is the daughter of Thomas Eron, whose brother, Stephen Eron is married to Jill Tolman Eron
[2] Petitioner was granted an extension to file her appeal (NYSCEF Doc No 7).

**157881/2024   IN RE APPLICATION OF LEIGH ERON vs. VILLAGE EAST TOWERS, INC. ET AL**   **Page 2 of 9**
   **Motion No.  001**

2 of 9

[* 2]

## DISCUSSION

*Standard of Review*

"In the context of an article 78 proceeding, it is established that judicial review is limited to a determination of whether the administrative decision is arbitrary and capricious, or lacks a rational basis" (*Slesinger v Dept. of Hous. Preserv. and Dev. of City of New York*, 39 AD3d 246, 246 [1st Dept 2007]). "[W]here such rational basis exists, an administrative agency's construction and interpretation of its own regulations are entitled to great deference" (*id*). "[E]ven if the court concludes that it would have reached a different result than the one reached by the agency", so long as the determination is supported by a rational basis, the court must sustain the determination (*Matter of Peckham v Calogero*, 12 NY3d 424 [2009]). "Moreover, judicial review of administrative determinations is confined to the facts and record adduced before the agency" (*Slesinger*, 39 AD3d at 246 [internal quotation marks omitted]). "An agency action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (*Figueroa v New York City Hous. Auth.*, 141 AD3d 468, 469 [1st Dept 2016] [internal quotation marks omitted]). "In reviewing an agency's application of its own regulations, courts must scrutinize administrative rules for genuine reasonableness and rationality in the specific context presented by a case" (*id*. [internal quotation marks omitted]).

*Mitchell-Lama Succession*

Petitioner argues that HPD's denial of her succession rights was arbitrary and capricious for three reasons. First, she argues that the decision was arbitrary and capricious in failing to find that the Village East had waived its right to challenge her application by failing to timely respond to her application. Next petitioner argues that the decision was arbitrary and capricious in failing to find that the handling of her appeal violated due process. Finally, petitioner argues that the

**157881/2024   IN RE APPLICATION OF LEIGH ERON vs. VILLAGE EAST TOWERS, INC. ET AL**          **Page 3 of 9**
 **Motion No.  001**

3 of 9

decision was arbitrary and capricious by failing to properly weigh the evidence she submitted that she was a family member of Mary Tolman's.

### i.     Timeliness of the Challenge

Petitioner argues that HPD decision failed to consider that Village East failed to timely respond to her application and has thus waived its right to oppose her succession rights application. 28 RCNY §3.02(p)(8) provides that:

> Where a family member applies to the housing company for permission to remain in occupancy as a tenant/cooperator, the housing company shall act on the application within thirty (30) days of receipt by either requesting that HPD approve the application or by denying the application and notifying the applicant family members in writing of its determination.

Here, it is undisputed that petitioner filed for succession rights in March of 2023 and that the two separate denial letters were not sent until September and December 2023. Petitioner contends that by failing to timely respond to her application, Village East waived its right to oppose the application. Thus, petitioner concludes, that HPD's decision was arbitrary and capricious because it failed to recognize that any opposition to the application had been waived.

However, HPD "is statutorily required to enforce the Mitchell-Lama Law and regulations regardless of any actions or acquiescence by [housing companies]" (*Matter of Schorr v New York City Dept. of Hous. Preserv. and Dev*., 10 NY3d 776, 778 [2008]). "It is well settled that estoppel cannot be invoked against a governmental agency to prevent it from discharging its statutory duties" (*id*. at 779). Since, HPD has a statutory duty to ensure that Mitchell-Lama succession requirements are satisfied, it would contravene the statutory purpose to deny HPD the right to review the merits of the application, due to a procedural error by Village East. Therefore, HPD's determination was not arbitrary and capricious in failing to consider whether Village East waived its right to oppose petitioner's application.

*ii.* *Due Process Rights*

Petitioner also argues that HPD's determination was arbitrary and capricious in failing to find that the procedural irregularities in the handling of her application violated her due process rights. In order to have a viable due process claim, the threshold question is whether the petitioner had a property interest that is subject to due process concerns (*The Bd. of Regents of State Colleges v Roth*, 408 US 564 [1972]). Applicants for succession rights do not have a property interest the apartments they are applying for (*Cadman Plaza N., Inc. v New York City Dept. of Hous. Preserv. and Dev.*, 290 AD2d 344 [1st Dept 2002]). However, even assuming that petitioner can assert a property interest in the apartment, the proceedings here satisfied requirements of due process. "The requirements of due process are satisfied where notice [is] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (*Matter of Harner v County of Tioga*, 5 NY3d 136, 140 [2005]). While petitioner, argues that her due process rights were violated because Village East sent two separate denial letters, and the first denial's appeal having not yet being addressed, petitioner was granted a full opportunity to submit documentation in support of her claim.

Additionally, as for petitioner's argument that allowing a second denial letter, further explicating Village East's arguments gives it "two bites of the apple," as discussed above HPD has a statutory duty to ensure that only qualified applicants are granted succession rights. It is petitioner's burden to prove she is qualified, and the actions and arguments of Village East are irrelevant to HPD's determination. Accordingly, HPD's determination was not arbitrary and capricious, by failing to address whether petitioner's due process rights were violated.

**157881/2024   IN RE APPLICATION OF LEIGH ERON vs. VILLAGE EAST TOWERS, INC. ET AL**          **Page 5 of 9**
**Motion No.  001**

5 of 9

[* 5]

### iii. Family Member Status

Finally, petitioner argues that HPD's determination was arbitrary and capricious because it fails to properly consider and weigh the evidence that petitioner was Mary Tolman's family member. "Succession is in the spirit of the statutory scheme, whose goal is to facilitate the availability of affordable housing for low-income residents and to temper the harsh consequences of the death or departure of a tenant for their 'traditional' and 'non-traditional' family members" (*Matter of Murphy v New York State Div. of Hous. and Community Renewal*, 21 NY3d 649, 653 [2013]).

To qualify for succession rights an applicant must show that they "qualify as family members or were otherwise sufficiently interdependent with the tenant-of-record; that the unit at issue was the applicant's primary residence during the two years immediately prior to the tenant's vacatur; and that they were listed as co-occupants on the income affidavits filed for the same two-year period" (*id*.). The statute defines family member in two different sections. First there is an exhaustive definition under 28 RCNY 3-02(p)(2)(ii)(A) which provides that:

> (ii) Family member' shall mean:
> (A) A husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law, or daughter-in-law of the tenant/cooperator.

28 RCNY 3-02(p)(2)(ii)(B) provides that an applicant can also qualify as a family member provided that they are:

> (B) Any other person residing with the tenant/cooperator in the apartment as a primary residence who can prove emotional and financial commitment and interdependence between such person and the tenant/cooperator. Although no single factor shall be determinative, evidence which is to be considered in determining whether such emotional and financial commitment and interdependence existed shall be the income affidavit filed

**157881/2024   IN RE APPLICATION OF LEIGH ERON vs. VILLAGE EAST TOWERS, INC. ET AL**          **Page 6 of 9**
**Motion No.  001**

6 of 9

[* 6]

by the tenant/cooperator for the apartment and other evidence which may include, without limitation, the following factors:

(a) longevity of the relationship

(b) sharing of or relying upon each other for payment of household or family expenses, and/or other common necessities of life;

(c) intermingling of finances as evidenced by, among other things, joint ownership of bank accounts, person and real property, credit cards, loan obligations, sharing a household budget for purposes of receiving government benefits, etc.;

(d) engaging in family activities by jointly attending family functions, holidays and celebrations, social and recreational activities, etc.;

(e) formalizing of legal obligations, intentions, and responsibilities to each other by such means as executing wills naming each other as executor and/or beneficiary, granting each other a power of attorney and/or conferring upon each other authority to make health care decisions each for the other, entering into a personal relationship contract, registering a domestic partnership pursuant to Executive Order No. 48, dated January 7, 1993 or Local Law No. 27 of 1998, serving as a representative payee for purposes of public benefits, or other such formalizations;

(f) holding themselves out as family members to other family members, friends, members of the community or religious institutions, or society in general, through their words or actions;

(g) regularly performing family functions, such as caring for each other or each other's extended family members, and/or relying upon each other for daily family services;

(h) engaging in other patterns of behavior, or other action which evidences the intention of creating a long-term, emotionally committed relationship.

It is undisputed that petitioner's relationship with Mary Tolman, as a great-aunt and great-niece is not enumerated in 28 RCNY 3-02(p)(2)(ii)(A). Petitioner argues that the HPD Hearing Officer erred by failing to find that she is a family member under 28 RCNY 3-02(p)(2)(ii)(B). Petitioner submitted in support of her application, income affidavits listing her and Mary Tolman for each year she lived in Apartment 20G, checks that petitioner sent to Jill Tolman, who was Mary Tolman's power of attorney, as evidence that they shared financial

**157881/2024   IN RE APPLICATION OF LEIGH ERON vs. VILLAGE EAST TOWERS, INC. ET AL**      **Page 7 of 9**
**Motion No.  001**

interdependence, photographs of petitioner and Mary Tolman at family events, and affidavits from petitioner and other family members who aver that the two shared a familial relationship. The Hearing Officer ultimately did not find the submitted evidence as credible to determine that the petitioner and Mary Tolman were family members through a shared a financial and an emotional commitment and interdependence determining that:

> As a member of the tenant's extended family, the applicant and the tenant likely attended some of the same events and may have shared a warm relationship. However, that type of relationship is not the equivalent of a family relationship as that term is defined in the HPD rules. A family relationship under 28 RCNY 3-02(p)(2)(ìi)(B) requires that the tenant and the applicant shared both a financial and an emotional commitment and interdependence

(NYSCEF Doc No 2 at 7).

As stated above the court's "review is limited to a determination of whether the administrative decision … lacks a rational basis" (*Slesinger*, 39 AD3d at 246). "Further, courts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise" (*Peckham*, 12 NY3d at 431). Here, the Hearing Officer considered all the evidence submitted by petitioner and determined that, pursuant to HPD regulations, it did not indicate that petitioner was entitled to succession rights. Even if a different conclusion could be reached based upon the evidence submitted, the decision by the Hearing Officer did not lack a rational basis, and thus cannot be disturbed.

**157881/2024   IN RE APPLICATION OF LEIGH ERON vs. VILLAGE EAST TOWERS, INC. ET AL**          **Page 8 of 9**
   **Motion No.  001**

8 of 9

[* 8]

Accordingly, it is,

ORDERED that the petition is denied.

20250303172023PGOETZ42E42C0EC00B4B3EB8E1079F36F27AF3

**3/3/2025**
**DATE**

**PAUL A. GOETZ, J.S.C.**

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**157881/2024   IN RE APPLICATION OF LEIGH ERON vs. VILLAGE EAST TOWERS, INC. ET AL**          Page 9 of 9
**Motion No.  001**

9 of 9